STATE, ex rel. O. J. HARRELL, et al., v. FRED P. CONE, J. M. LEE, and W. V. KNOTT, as and constituting the Board of Administration; J. M. LEE, as State Comptroller, and as Secretary of the Board of Administration; W. V. KNOTT, State Treasurer, and as County Treasurer ex officio of Washington County, a political subdivision.

177 So. 854.
En Banc.
Opinion Filed October 6, 1937.
On Rehearing January 5, 1938.

*H. H. Wells, B. K. Roberts* and *William K. Whitfield* (all of Tallahassee), *Marion B. Knight, John D. Trammell, Robert W. Robertson* and *B. L. Solomon,* for Petitioners;

*Cary D. Landis,* Attorney General, *H. E. Carter, J. Compton French* and *W. P. Allen,* Assistant Attorneys General, *J. Velma Keen, A. Frank O'Kelley, Jr.,* and *Waller & Meginniss,* for Respondents;

*Pleus, Williams & Pleus* and *John D. Trammell,* as *Amici Curiae.*

TERRELL, J.—The Legislature of 1937 enacted Chapter 17967, authorizing the State Board of Administration to "distribute and pay monthly to the County Road and Bridge Fund of Washington County all moneys appropriated to the use of the State Road Department for the construction within the said county of these State Roads within said county which were heretofore designated as and recognized by the State Road Department as being a part of the first, second, or third preferential system of State Roads."

The State Board of Administration created by Chapter 14486, Acts of 1929, composed of the Governor, Comptroller, and State Treasurer, by a majority vote ordered the distribution as authorized by Chapter 17967, but the

160

Comptroller, being the Secretary of the Board and having voted against the distribution, declined to draw his warrant against the State Treasurer to make it. This proceeding in mandamus was brought by C. W. Nelson, a citizen taxpayer, and the Board of County Commissioners of Washington County against the State Board of Administration and J. M. Lee as Comptroller and Secretary of said Board, and W. V. Knott as State Treasurer and County Treasurer *ex officio* of Washington County, to compel them to distribute the funds to Washington County in compliance with the Act.

J. M. Lee as Comptroller and Secretary moved to quash the alternative writ challenging the constitutional validity of Chapter 17967. The Governor and the State Treasurer filed a return signifying their willingness to comply with the commands of the alternative writ but they assert that the Comptroller had refused to draw a warrant upon the State Treasurer to accomplish that purpose. The issue so made is before us for adjudication.

The first question with which we are confronted is whether or not J. M. Lee as Comptroller of the State and as Secretary of the State Board of Administration is empowered to challenge the constitutional validity of Chapter 17967 in a proceeding of this kind.

The petitioners contend that this question must be answered in the negative and rely on State, *ex rel.* Atlantic Coast Line Railway Co. v. State Board of Equalizers, 84 Fla. 592, 94 So. 681, 30 A. L. R. 362; County Commissioners of Franklin County v. State, *ex rel.* Patton, 24 Fla. 55, 3 So. 371; Adams v. American Agricultural Chemical Co., 78 Fla. 362, 82 So. 850; Land v. State, 77 Fla. 212, 81 So. 159; State v. City of Sarasota, 92 Fla. 563, 109 So. 473; City of Seabring v. Wolf, 105 Fla. 516, 141 So. 736;

State, *ex rel.* Alderman, v. Beville, 107 Fla. 57, 144 So. 331; State, *ex rel.* Clarkson, v. Philips, 70 Fla. 340, 70 So. 367; and State, *ex rel.* McMullen, v. Johnson, 102 Fla. 19, 135 So. 816, to support their contention.

We have examined these cases and find much learning on the subject exemplified in them. The case of State, *ex rel.* Atlantic Coast Line Railway Co. v. State Board of Equalizers is one of the leading cases in the country on the question, and is the one most strongly relied on. The majority opinion in that case, quoting from People, *ex rel.* Attorney General, v. Solomon, 54 Ill. 39, says that "this is the first case in our judicial history, in which a ministerial officer has taken upon himself the responsibility of nullifying an Act of the Legislature for the better collection of the public revenue."

The theory of the majority opinion in that case is predicated on the ground that ministerial officers of the State had arrogated to themselves the judicial prerogative of nullifying an Act of the Legislature. Nullifying an Act of the Legislature is in fact a very different matter from challenging the constitutional validity of an Act, the former being exclusively a judicial function while the latter may be done by an officer or an individual under permissible circumstances as we shall presently show.

In 30 A. L. R., at page 378, under annotations following, State, *ex rel.* Atlantic Coast Line Railway Co., v. State Board of Equalizers, *supra,* the subject, "Unconstitutionality of statute as defence to mandamus proceedings" is fully discussed and all the cases collected. From these cases, the general rule is deducted that a ministerial officer cannot in mandamus question the constitutionality of a statute imposing strictly ministerial duties on him that are subordinate in character and incidental to the main purpose

of the Act when no injury can possibly result to him or the public by compliance ·with the Act. This rule was recognized in the dissenting opinion of Mr. Justice WHITFIELD in the last cited case and was supported by many authorities.

A study of the cases in 30 A. L. R., *supra,* reveals many exceptions to and departures from this general rule. If the terms of the statute imposing the duty are ambiguous and susceptible of more than one interpretation, the respondent officer in a mandamus proceeding to compel him to obey it may challenge the constitutional validity of the construction placed on it by the relator. State, *ex rel.* Clark, v. West, 272 Mo. 304, 198 S. W. 1111.

There is another line of cases which hold that since an unconstitutional Act binds no one a ministerial officer affected by it may challenge its validity in any proceeding brought to require him to comply with it whether his personal rights are affected by it or not. State, *ex rel.* McCurdy, v. Tappan, 29 Wis. 664; State, *ex rel.* University of Utah, 406, 104 Pac. 285, 24 L. R. A. (N. S.) 1260; Van Horn v. State, 46 Neb. 62, 64 N. W. 365; Brandenstein v. Hoke, 101 Cal. 131, 35 Pac. 562. The case of State, *ex rel.* University of Utah, v. Candland, *supra,* also supports the rule that if· a ministerial officer is directly responsible for his official acts, he may challenge the constitutional validity of the Act prescribing them in an action to compel him to comply with it.

· There is a line of cases which hold that a ministerial officer may, as a defense to a proceeding in mandamus, raise the constitutional validity of an Act imposing duties on him which are of general public interest. State, *ex rel.* Hubbard, v. Holmes, 53 Fla. 226, 44 So. 179; Wright v.

Kelley, 4. Idaho 624, 43 Pac. 565; Ames v. People, *ex rel.* Temple, 26 Cal. 83, 56 Pac. 656.

Many cases hold that if an Act requires a ministerial officer to perform duties particularly affecting him personally, as where he will violate his oath of office if he performs them, or where he is charged with the control and disbursement of public funds, his official capacity gives him such an interest in the matter that he may challenge the validity of the Act in mandamus. State, *ex rel.* Russell, v. Barnes, 25 Fla. 75, 5 So. 698; State, *ex rel.* Wiston County, v. Snyder (Wyo.), 212 Pac. 758; Woodall v. Darst, 71 W. Va. 350, 77 S. E. 264, 80 S. E. 367; Davis-Smith and Co., v. Clausen, 65 Wash. 156, 117 Pac. 1101; Commonwealth, *ex rel.* Attorney General, v. Matheus, 210 Pa. 372, 59 Atl. 961; Miller v. Leech, 33 N. D. 513, 157 N. W. 492; Rhea v. Newman, 153 Ky. 604, 56 S. W. 154; Stockman v. Leddy, 55 Col. 24, 129 Pac. 220; Denman v. Broderick, 111 Cal. 96, 43 Pac. 516.

The case under review falls easily within the rule last supported and some of the cases cited go so far as to hold that when in the performance of an act imposed by statute, an officer is required to violate his oath of office to support the Constitution, in any way jeopardizes the interest of the public or otherwise render himself liable for breach of duty, he should in justice to himself and the public be entitled to raise the constitutional validity of the Act in mandamus to compel performance.

But the Comptroller as such and as Secretary of the Board of Administration is more than an administrative officer. Section 23 of Article IV of the Constitution, requires him to examine, audit, adjust, and settle the accounts of all officers of the State, and Section 142, Compiled General Laws of 1927 makes it his duty to examine, audit, and

settle all accounts, claims, and demands whatsoever against the State arising under any law or resolution of the Legislature and to draw his warrant on the State Treasurer for such amount as he may allow. These provisions apply to amounts disbursed under the Board of Administration Act and in the absence of the rule as stated would authorize the Comptroller to challenge any Act disbursing public funds if he entertains grave doubt as to its validity.

The second question with which we are confronted may be stated as follows: Is there any inhibition in the Constitution against the Legislature imposing an excise tax for a public purpose and distributing the proceeds in the manner provided by Chapter 17967, Acts of 1937?

The excise tax brought in question was imposed by Chapter 14575, Acts of 1929, as amended by Chapter 15659, Acts of 1931, and was designated in the latter Act as the "second gas tax." It was "a tax of three cents (.03) a gallon to be apportioned as provided for in Section 8 of this Act," and was required to be paid into the State Roads Distribution Fund:

Summarized, Section 8 provides that the State Road Department shall ascertain and report to the Comptroller the amount of money advanced to the State by each County Special Road and Bridge District or other taxing district for the use of the State Road Department in the construction of state roads. The Comptroller was required to audit the amounts certified to him and if found correct, was required to draw his warrant on the State Treasurer for the net amount shown to be due each county, the warrants so drawn to be paid from the State Road Distribution Fund. The method of distribution specified in the Act was one cent in the proportion that the area of the county bore to the total area of all the Counties; one cent in the pro-

portion that the population of the county bore to the population of the State and one cent in the proportion that the county or any special Road and Bridge District or other taxing district in the county advanced and contributed to the construction of state roads.

Section 8 also provides that after the moneys advanced by the counties and special taxing districts has been restored, they should continue to participate in the distribution on the same basis but that the amount accruing to them should be paid monthly to the State Road License Fund to be used by the State Road Department as soon as practicable for the construction of those roads within the county recognized as being a part of the first, second, or third preferential system of State roads.

In Carlton v. Mathews, 103 Fla. 310, 137 So. 815, we held that the primary purpose of Chapter 15659, Acts of 1931, in imposing the "second gas tax," was to provide for reimbursement to the counties and special taxing districts for moneys expended by them or contributed to the State for the construction and building of public roads within the county which by Acts of the Legislature had been designated and taken over as State Roads and when done to continue the distribution of said funds to the counties for the construction of state roads therein. No county could participate in the distribution of the "second gas tax" that did not meet these conditions.

We also held in Carlton v. Mathews, that the "second gas tax" was for a current state expense, viz., the construction and maintenance of a system of state roads. This is a State expense which the Constitution required the Legislature to provide for annually, Section 2, Article IX. The Constitution requires a uniform and equal rate of taxation but does not require uniformity and equality in dis-

tribution of state funds for state expenses, the institutions, and instrumentalities including highways for which the taxes are imposed not being uniformly located throughout the State.

The "second gas tax" was imposed under Section 5 of Article IX of the Constitution which says among other things that the "Legislature may also provide for levying a tax on licenses." The license or excise tax is not burdened with the limitations carried in the same section on ad valorem taxes imposed for county purposes and in the matter of its distribution, the Legislature has a very broad discretion. License taxes must be imposed by statute at a uniform and equal rate, must not violate organic property rights and must not run counter to federal authority.

The "second gas tax" is a state tax collected by state officers and apportioned to the counties for a designated purpose or purposes. It has been designated a county fund when it gets to the counties. Amos v. Mathews, 99 Fla. 1, 126 So. 308; Carlton v. Mathews, *supra*. Ordinarily the Legislature has plenary power in the matter of apportioning or allocating a State tax among its political subdivisions. Chapter 15659 imposing and distributing the "second gas tax" limited its use to a designated state purpose, to-wit, the construction of a system of public roads. The State has plenary power over the public roads, whether they belong to the state or county system. The "second gas tax" is a state tax; it was imposed for a state purpose and cannot under the guise of a general Act, local in effect, be diverted to the counties for an *exclusively* county purpose; but it may be disbursed among the counties to be used by them for *a state purpose*. On account of the limited application of the Act authorizing the "second gas tax," any Act

allocating it to the counties must limit its application to the construction of roads and bridges.

Chapter 17967, Acts of 1937, proposes to divert Washington County's part of the "second gas tax" to the county road and bridge fund of the county, to be used by it for road construction. It is contended that such a diversion is for the sole purpose of constructing and maintaining local county roads and bridges which is contrary to the spirit and purpose of Chapter 15659 imposing the tax.

This contention goes to the use after distribution and not to the manner of the distribution. It is not contended that the manner of the distribution was illegal. It was for a purpose within the contemplation of Chapter 15659 and being so, was within the power of the Legislature to make. We will not assume that the county will use it for an unlawful purpose. If that should be attempted, it may be intercepted by any taxpayer or other person interested in an appropriate action.

It is contended that Chapter 17967, Acts of 1937, is in violation of Section 20 of Article III of the Constitution in that it undertakes to regulate the duties of a class of state officers and in that it attempts to deal with the assessment and collection of taxes for state and county purposes.

Section 20 of Article III prohibits the passage of a local bill that regulates the duties of any class of officers or that pertains to the assessment annd collection of taxes. Chapter 17967, Acts of 1937, pertains to the allocation of a tax that was imposed and collected under a general law and does not presume to regulate the assessment or collection of a tax. It adds to the administrative duties of the Board of Administration but that is a mere incident to the main purpose of the Act and may be done without violating the Constitution. Jackson Lumber Company v. Walton County,

95 Fla. 632, 116 So. 771, and McMullen v. County of Pinellas, 90 Fla. 398, 106 So. 73.

It is contended that Chapter 17967, Acts of 1937, is in violation of Sections 2 and 7, Article IX, of the Constitution in that it undertakes to appropriate state funds for county purposes.

Carlton v. Mathews, *supra,* and our answer to the second question herein would seem to settle this question contrary to respondent's contention. The building of public highways is primarily a state function but it may be delegated to the county or some other state agency. A public road may be both a state and county function. Keggin v. Hillsborough County, 71 Fla. 356, 71 So. 372; Lewis v. Leon County, 91 Fla. 118, 107 So. 146.

As to the contention that Chapter 17967, Acts of 1937, undertakes to amend Sections 8 and 9 of Chapter 15659, Acts of 1931, without reenacting and publishing the sections as amended, contrary to Section 16 of Article III of the Constitution, it is sufficient to say that when by implication or necessary intendment, an Act of the Legislature changes a prior law, the Constitution is not violated by failure to comply with Section 16 of Article III. Miami Transit Co. v. Amos, 115 Fla. 842, 156 So. 279.

Other questions raised have been considered and found to be devoid of merit. The motion to quash the alternative writ is denied.

It is so ordered.

WHITFIELD and CHAPMAN, J. J., concur.

- ELLIS, C. J., and BUFORD, J., dissent.

BROWN, J., dissents in part.

WHITFIELD, J. (concurring)—The "second gas tax" imposed by Chapter 15659, Acts of 1931, Section 1167 (16) *et seq.,* C. G. L., Perm. Supp. 1936, is a state excise tax

levied by statute, collected by state officials, placed in a named state fund, and allocated to the counties severally to be used for stated public road purposes, with reference to the population, area and stated public road construction indebtedness of the counties severally.

The construction and maintenance of public roads in the several counties of the State may by statute be made a state expense and purpose as well as a county purpose, whether such public roads are designated state roads or preferential roads or not; and the allocation of state road funds to a county for public road purposes indicates an intent to make such purpose a state expense.

Being a state fund derived from excise taxes levied by the statute for public road purposes, the "second gas tax" may be used in whole or in part by the State or by counties for public road purposes as may be provided by statute. The provisions of Chapter 15659, Acts of 1931, as to allocations and appropriations of state public road funds, may be amended in any way not forbidden by the Constitution.

If the "second gas tax," which produces a state public road fund, may be allocated to the counties for public road purposes by reference to the population, area and public road indebtedness of the counties respectively, it may by statute be allocated to the counties for public road purposes in any other way that is not contrary to organic law. The construction and maintenance of public roads, whether they are designated state roads or preferential roads or not, are or may by statute be made a state purpose; and the proceeds of the "second gas tax" may be allocated and used for the construction and maintenance of public roads by designated counties as statutes may provide, whether such allotments accord with those made in Chapter 15659, Acts

of 1931, or not, when vested rights are not thereby invaded and no provision of the Constitution is violated.

The Constitution does not forbid the allocation of portions of a state public road fund to designated counties by statutes which in effect amend a general law allocating such fund to the counties, all of such allotments being for public road purposes; and such statutes changing the method of distributing state road funds to be used by the counties for public road purposes may in effect be appropriations of portions of the state public road funds to accord with allotments made by statutes to particular counties for public road purposes.

TERRELL and CHAPMAN, J. J., concur.

BUFORD, J. (dissenting).—I concur in what has been said in the opinion prepared by Mr. Justice TERRELL for this Court concerning the right of the Comptroller to refrain from disbursing public funds under purported authority of a legislative Act which he in good faith believed to be contrary to the provisions of the Constitution. I am willing to go a little further than the language used in that opinion and, on authority of the cases therein cited, say that it becomes the duty of a public official like the Comptroller of the State of Florida to exercise the utmost care in disbursing public funds entrusted to his custody and control and if a legislative Act directs him to pay out money for a purpose, or in any manner which he in good faith believes to be contrary to the provisions of the Constitution, it becomes his duty to decline to so pay out the public funds until such time as he shall have procured the decision of a court of competent jurisdiction upholding the validity and constitutionality of the legislative Act so appearing to him to be invalid.

I cannot concur in the remainder of the opinion for the

reason that it appears to me that Chapter 17967, Acts of 1937, is a special law in conflict with Section 21, Article III, of the Constitution in that it regulates the duties of a certain class of officeers to-wit, the State Board of Administration, in regard to the distribution of public funds and applies to Washington County only. It also attempts to require the payment of state funds to certain county officers to be used for county purposes and without an appropriation authorizing such payment, in violation of Section 4, Article IX of the Constitution.

The Act also creates an unlawful discrimination as to the participation by Washington County in a fund produced by state taxation for the benefit of the State as a whole.

Section 1 of the Act under consideration provides as follows:

"Section 1. That whenever any moneys derived from gasoline taxes imposed under the laws of the State of Florida shall be placed to the credit of Washington County in the State of Florida, the State Board of Administration shall be, and it is hereby authorized, empowered and directed to distribute and pay monthly to the County Road and Bridge Fund of said Washington County all moneys appropriated to the use of the State Road Department for the construction within the said county of these state roads within said county which were heretofore designated as and recognized by the State Road Department as being a part of the first, second, or third preferential system of State Roads."

Turning to Chapter 15629, Acts of 1931, we find that that Act provides in part:

"Second Gas Tax: A tax of three (3c) a gallon to be apportioned, as provided for in Section 8 of this Act."

Section 3 of the Act provides as follows:

"Section 3. All moneys derived from the gas taxes imposed by this Act, shall be paid into the State Treasury by the Comptroller, as follows:

"First Gas Tax.—Shall be paid into the 'State Road License Fund';

"Second Gas Tax.—Shall be paid into the 'State Roads Distribution Fund.'

"Which said special funds are hereby created for the reception of the same."

Sections 6 and 7 of the Act provide as follows:

"Section 6. All such moneys in the 'State Road License Fund' shall be used for the construction and maintenance of State Roads, as otherwise provided by law, under the direction of the State Road Department which department may from time to time make requisition on the Comptroller for funds to pay for the construction and maintenance of state roads. Money from said funds shall be drawn by the Comptroller by warrant upon the State Treasury pursuant to vouchers, and shall be paid in like manner as other state warrants are paid out of the appropriate funds against which same are drawn, and all sums of money necessary to provide for the payment of said warrants by the Comptroller drawn upon said funds are hereby appropriated annually out of said funds for the purpose of making such payments from time to time.

"Section 7. It is hereby expressly recognized and declared by the Legislature of the State of Florida that all roads being constructed or built or which have heretofore been constructed or built, or which will be hereafter constructed or built by the State Road Department under prior authorization and/or designation by the Legislature of the State of Florida as state roads, or which were constructed

or built by any county or special road and bridge district or other special taxing districts thereof, were, are and will be constructed and built as state projects and undertakings, and that the cost of the construction and building thereof was, is and will be a legitimate proper state expense incurred for a general and state purpose and should be wholly borne by the State of Florida. It is hereby expressly recognized that certain of the counties of the State of Florida and/or special road and bridge districts or other taxing districts of such counties have advanced or contributed and paid to the State Road Department varying sums of money to be used and expended by said State Road Department in the construction and building of state roads theretofore authorized and/or designated by the Legislature of the State of Florida as state projects, and it is hereby expressly recognized that certain of the counties of the State of Florida and/or special road and bridge districts or other taxing districts of such counties have paid or expended or caused to have been paid or expended varying sums of money in the construction and building of certain roads that are now state roads and heretofore designated as state roads by the Legislature of the State of Florida and that all such moneys have been and are being expended, furnished, advanced, contributed or paid out on account of expenses of the State in construction and building of said state roads to and for the general benefit of the State and that such sums should be returned and repaid respectively to each county to the amount that such county and/or any special road and bridge district or special taxing districts thereof have advanced or expended in the construction of the same."

Section 8 provides:

"Section 8. (a) The chairman and auditor of the State

Road Department shall within ninety (90) days after this Act becomes a law, ascertain and certify to the Comptroller of the State of Florida and to the Board of Administration and to each county within the State of Florida the amount of money advanced and paid by the several counties, and/or special road and bridge districts or other special taxing districts of any counties to the State for the use of the State Road Department in the construction and building of state roads, specifying separately and particularly the amount advanced and paid by each county; and the chairman and auditor of the State Road Department shall within ninety (90) days after this Act becomes a law, ascertain and certify to the Comptroller and to the Board of Administration and to every county of the State of Florida, the amount of money furnished, advanced, contributed, paid out or expended by the several counties and/or special road and bridge districts or other special taxing districts of such counties in the building and construction of roads that are now designated state roads, specifying separately and particularly the amount furnished and expended by each county. The amount so certified as to any county shall include all moneys advanced, contributed, paid and expended, as aforesaid, by such county and by every special road and bridge district or other special taxing district for road and bridge purposes on roads now designated as state roads, in such county.

"(b) Said certificate shall be audited by the Comptroller, and, being found correct, shall constitute the basis for the subsequent allocation and apportionment of the moneys to be derived from the Second Gas Tax and from which the disbursement shall be made to, or for the benefit of, such respective counties as herein provided out of said 'State

Roads Distribution Fund' account. The Comptroller shall each month draw his order on the Treasurer of the State of Florida for the full amount of moneys then with the State Treasury in said 'State Roads Distribution Fund' specifying the counties to which said moneys shall be paid, and the amount to be paid to each county respectively, which said sums so apportioned to the counties are hereby appropriated monthly out of said 'State Roads Distribution Fund's account. Said orders of said Comptroller shall be countersigned by the Governor, and shall be payable to the State Treasurer as *ex officio* Treasurer of the counties, respectively, participating therein. The monthly schedule of installments to be so paid to or for such counties shall be computed, determined and paid out monthly in the following ratio, to-wit:

"1. The proceeds of one cent of the said Second Gas Tax shall be apportioned to the credit of the several counties on the basis of area of said counties, that is to say, the apportionment shall be to the county in the proportion that the area of the county shall bear to the area of all the counties;

"2. The proceeeds of one cent of the said Second Gas Tax shall be apportioned to the credit of the several counties on the basis of population of the counties, that is to say, the apportionment shall be to the county in the proportion that the population of the county shall bear to the total population of the state, as determined by the last preceding general State or Federal census taken; and

"2. The proceeds of one cent of the said Second Gas Gas Tax shall be apportioned to the credit of the several counties on the basis of contribution which has heretofore been made by the respective counties and/or special road and bridge districts or other special taxing districts of such

counties to the construction of state roads, either through funds or the equivalent thereof of the county and/or special road and bridge district, or other special taxing districts, of such counties turned over to the State Road Department from time to time or through roads constructed by the counties and/or special road and bridge districts or other special taxing districts of such counties at county or district expense, and which were then or thereafter made a part of the existing state highway system.

"(c) Whenever the amount furnished, advanced, paid out, contributed or expended by any county and/or special road and bridge district or other special taxing district of such county, directly, or through the State Road Department, in the construction or building of such state roads, within such county, has been returned to such county, such county shaall continue to participate in the distribution of the three (3c) of the Second Gas Tax as provided in Section 8 (b) hereof, so that thereafter a sum equal to the sum provided to be returned to or for such county under this Act shall be monthly paid into the State Road License Fund, and same is hereby monthly appropriated to the use of the State Road Department for the construction within said county of those state roads within such county which were at the time of the passage of this Act designated' as and recognized by the State Road Department as being a part of the first, second or third preferential system of state roads, and which roads, to the extent of such funds, are to be constructed and built in such counties, respectively, by the State Road Department as soon as practicable as state projects and undertakings.

"Such funds shall be applied and used by the State Road Department for such purpose and not otherwise, and the expense of constructing said roads is hereby declared to

be a legitimate proper state expense to be incurred for a general and state purpose.

"When any county in the State of Florida no longer participates under the provisions of this Act in the return to or for it of moneys contributed for the construction of state roads, as herein provided, and when these roads shall have been constructed which are at the time of the passage of this Act a part of the first, second and third preferential system of state roads within such county, then and thereafter all funds thereafter derived from the Second Gas Tax theretofore allotted or appropriated to or for said county shall be transferred to the State Road License Fund of the State of Florida in the manner and to be expended as provided by law."

Section 9 provides:

"Section 9. All moneys provided for hereunder to be credited to the various counties of the State and so paid to the State Treasurer as *ex officio* county Treasurer shall be administered by the Board of Administration, as provided by law.

"Moneys to be used for road and bridge construction in the completion of the first, second and third preferential state road system within any county as herein provided, shall be placed in the State Treasury in the State Road License Fund to the credit of the State Road Department and same is hereby appropriated for use by said State Road Department in the construction of roads and bridges in such preferential road system in the various counties to which the same is credited."

Chapter 17967, Acts of 1937, insofar as Washington County is concerned, attempts to supersede the provisions of subparagraaph (c) of Section 8 and to place the funds referred to in that paragraph of Section 8 beyond the con-

trol of the State Road Department and in the· exclusive control of the Board of County Commissioners of the county to be used as a part of the County Road and Bridge Fund of that county. If that fund becomes a part of the County Road and Bridge Fund, it may be transferred from that fund to another under the provisions of Section 1526 R. G. S., 2304 C. G. L. There are numerous counties in the State as to which the Legislature either has by valid enactment, or otherwise, purported to authorize the county commissioners to transfer money from one fund to another upon resolution of the Board of County Commissioners without reference to the Comptroller.

The Act now under consideration ,destroys, as far as Washington County is concerned, the very foundation principles upon which Chapter 15659 was upheld as a valid enactment.

In the case of Carlton v. Mathews, 137 Sou. 815, after having quoted extensively from the Act involved, we said:

"Under the law we are considering in the instant case, there is nothing said regarding the use of the money to pay county and special road and bridge district bonds. The state revenue realized under the instant law is by the terms of the law to be used in reimbursing and paying certain counties and/or special road and bridge, and other special taxing districts, for the construction of roads, and for *contributions made in the construction of roads which the Legislature* by virtue of its *sovereign power* has taken over as *state roads* and which the Legislature recognized as a moral obligation, which in justice, honor, equity and good conscience should be paid. The Act then appropriates the state funds arising from the second gas tax to pay this recognized state expense. The funds appropriated do not

become county funds until they have been paid to the state treasurer as *ex officio county treasurer.*

"Under the law as we have it in this case, the right of any county and/or road or bridge or other taxing district to participate in the money appropriated from funds derived through the second gas tax is not dependent upon whether or not it has outstanding bonds issued for road purposes, but the right to participate depends upon whether or not it has constructed or built roads which have since been taken over and designated by the Legislature of Florida as state roads; and whether or not it has contributed, advanced or paid out moneys in the construction of state roads by the State Road Department. A county and/or special road and bridge or other taxing district may have paid and retired its issue of bonds, if any it had, but if the money realized from the issue or from any other sources were used in constructing roads that have been taken over by the state, or if it advanced the proceeds of such bond issue or any of its other funds to the State Road Department for the construction of roads designated as State Roads, such a county or special road and bridge district participates in the money appropriated to the extent of the money expended in the construction of, and contribution to the construction of state roads. Perhaps there are counties that have constructed roads now designated and taken over and used by the State as State Roads, or counties and special road and bridge districts, which have advanced and contributed moneys for the construction of such roads, but that no bonds were issued for such purpose. Any such county and/or special road and bridge district may participate in the distribution of the funds appropriated under this Act to the extent of their contribution

to the construction of those state roads, although they never had *bond issues*.

"From our study of Chapter 15659, Laws of Florida (House Bill 65-X) Acts of 1931, Ex. Sess., we think it clearly appears that the primary purpose and intent of the Legislature in providing for the second gas tax, and in the appropriation of the funds derived from it, was *not* to pay in whole or in part the principal and interest of the bonds of political subdivisions of the state, *but* to provide for the reimbursement of counties and special road and bridge districts or other taxing districts for moneys expended and/or contributed by them in the construction and building of roads which the state by Acts of the Legislature had designated and taken over as State roads. We are of the opinion that the decision of this Court in the case of Amos v. Mathews is not decisive of this case. Appellee very strongly relies upon several previous decisions of this court to sustain his contention that the levy of the second gas tax and the appropriation of the proceeds thereof are void and violative of Sections 2 and 6, Article IX, of the Constitution, quoted above. Among other cases he cites Chency v. Jones, 14 Fla. 587; *In re* Advisory Opinion to Governor, 94 Fla. 967, 114 So. 850, 855, State v. Green, 195 Fla. 117, 116 So. 66."

And again we said:

"We might say also in the Martin v. Dade Muck Land Co. case these appropriations were being made without the State having received anything of benefit or value in return.

"In the instant case we have before us a statute making appropriation of state funds for a purpose radically different from those provided in the statutes considered by us in the cases above referred to.

"In Chapter 15659, Laws of 1931, Ex. Sess. (House Bill 65X) we are considering a statute levying a tax and making appropriation of the moneys derived therefrom for a general public purpose, i. e., to pay for state roads constructed by counties and special road and bridge districts, to reimburse counties and taxing districts for moneys advanced in construction of state roads; and, lastly, to continue in such counties the building of state roads on the first, second and third preferential system of state roads. There is nothing in the Act obligating the state to pay principal and interest on bonds of any kind. There is nothing to show any recognition by the state that it is in any way obligated to pay bonds of any kind.

"That some of the moneys appropriated to pay and reimburse counties and/or special road and bridge or other districts will be used by the board of administration, a county fiscal agency of the participating counties, to pay the interest and principal and to provide for the sinking fund to take care of the principal of county and district bonded indebtedness, does *not* by any means affect the validity of the Act, the levy of the tax, or the appropriation of the funds. The provisions of Sections 2 and 6 of Article IX of the Constitution are not contravened thereby."

And again it is said in that opinion:

"Chapter 15659, Acts of 1931, Ex. Sess., when properly interpreted, does not in any way undertake to treat the amounts expended and advanced or contributed by counties and/or road and bridge districts, for the construction of roads subsequently taken over by the state as an advance or loan to the state, constituting a contractual obligation upon the part of the state to repay. In this Act the Legislature only recognized and declared that the

amounts expended, advanced, furnished, contributed by such political subdivisions of the state for the construction and building of the state roads was for a general public purpose benefiting all the state, was a legitimate proper expense incurred for a general and public purpose, and should be wholly borne by the State of Florida; and providing for the raising of revenue to carry out its announced determination. There is no expression in the law recognizing any contractural liability upon the part of the State. Any future sessions of the Legislature may change the program set forth in this Act carrying out the policy of the Legislature of 1931, by repealing the law providing for the second gas tax or passing a law appropriating the revenue derived from it to other state purposes.

"The Legislature of the State of Florida has the power and authority to declare that moneys expended by counties and/or special road and bridge districts therein in the construction of roads, or furnished and contributed to the State in the construction of roads taken over by the State is a proper expense to be borne by the State, and to levy taxes and appropriate the proceeds, to pay such amount upon moral and equitable considerations and as obligations of justice and honor, as distinguished from legal 'Contractual' obligations; the power to ascertain and determine the obligations within this class being entirely political and legislative. United States v. Realty Co., 163 U. S. 427, 16 S. Ct. 1120, 41 L. Ed. 215; Guthrie National Bank v. City of Guthrie, 173 U. S. 528, 19 S. Ct. 513, 43 L. Ed. 796; Knights v. James Jackson, Treasurer and Receiver General, 260 U. S. 12, 43 S. Ct. 1, 67 L. Ed. 102; Mitchell v. Lowden, 288 Ill. 327, 123 N. E. 566, 567."

And again in the same opinion we said:

"Section 1 of Article 9 of the Constitution provides that

the Legislature shall provide for a *uniform rate* of taxation. It is claimed that the plan for the apportionment of the second gas tax is violative of this provision of the Constitution. It will be noted that the rate of taxation is the same throughout the State. It may be that in the levy of this tax the State will secure more money from some counties than from others because more gasoline is sold in the more populous counties. However, this is true regarding any tax levied for state purposes, either ad valorem or excise. But the mere fact that larger sums of money for state tax are collected from some counties than from others does not require that the state appropriate it for state purposes in counties in proportion to the amount of state tax collected in such counties. If that were the case, many of the state institutions would fail to have the necessary funds for their support. The second gas tax is, as has already been held in this opinion, a *state tax, and the revenue derived therefrom is by the terms of the Act appropriated for a state purpose* (emphasis supplied) i. e., to repay or reimburse counties and special road and bridge districts for moneys expended by them on state roads. The Legislature, in the exercise of its power, has determined that the second gas tax at 3 cents per gallon be appropriated and distributed as we have already observed."

Under the provisions of Chapter 15659, *supra,* the second gas tax was distributed for the benefit of all counties to be used for the benefit of all counties in the same manner and that use in all counties was limited to use for state purposes, except that part of the fund which was distributed to the counties in payment for, or reimbursement for, the expense which the counties had incurred in constructing highways which had been, or were authorized to be, taken over by the State Road Department. That part of such

fund is not involved in this case. The fund here involved is one which has accrued after Washington County had been fully repaid and reimbursed for moneys expended in the construction of that class of roads above referred to.

It was the purpose of Chapter 15659, *supra,* as construed by this Court in Carlton v. Mathews, *supra,* to collect a fund by way of the second gas tax and appropriate that fund to the extension of a comprehensive system or *State* highways throughout the State by reimbursement to counties of funds theretofore expended by the county for the construction of designated highways to be then *acquired by* and *taken over* by the State, and by the construction of additional designated State roads in each and every county by the State agency charged with the construction of State highways, the State Road Department.

There was no other construction under which the Act could have been held valid. The collection of a tax of any sort in one county and spending it in another can only be upheld upon the ground that it is being so spent for a State purpose, as distinguished from a county purpose, or that it is being spent for a purpose specifically authorized by the Constitution, such as aid to county public schools.

I apprehend that had the paragraph of Chapter 15649, *supra,* reading as follows: "When any county in the State of Florida no longer participates under the provisions of this Act in the return to or for it of moneys contributed for the construction of state roads, as herein provided, and when these roads shall have been constructed which are at the time of the passage of this Act a part of the first, second and third preferential system of state roads within such county, then and thereafter all funds thereafter derived from the Second Gas Tax theretofore allotted or appropriated to or for said county shall be transferred to

the State Road License Fund of the State of Florida in the manner and to be expended as provided by law." been written so as to read: "When any county in the State of Florida no longer participates under the provisions of this Act in the return to or for it of moneys contributed for the construction of state roads, as herein provided, and when these roads shall have been constructed which are at the time of the passage of this Act a part of the first, second and third preferential system of state roads within such county, then and thereafter all funds derived from the second gas tax theretofore allotted or apportioned to or for said county shall be transferred to the county road and bridge fund of the respective counties to be used by such counties as other county road and bridge funds are used," that this Court would have held that part of the Act invalid for and because of the identical reasons for which it held certain provisions of Chapter 14575, Acts of 1929, invalid. See Amos v. Mathews, 99 Fla. 1, 126 Sou. 308. County roads which have not been designated as State roads or state aid roads by the Legislature are county projects and the construction thereof remains a county purpose until the Legislature shall have declared otherwise, The county road and bridge fund is a fund created to be used for county purposes and if this gasoline tax, which is beyond question now a state tax, can be diverted to a county fund to be used for a county purpose, although that county purpose is one in which the State has a vital interest, it necessarily follows that a general sales tax could be levied and distributed to the counties to augment any county fund which is created for the benefit or use in accomplishing any purpose in which the State has also a vital interest and I know of no county governmental purpose for which money may be expended which, if properly handled, does not redound to the benefit of the State at large.

Our Court went the limit, it appears to me, when it held Chapter 15,659, *supra,* valid and it only did so upon the theory that the Act provided in effect that all the money derived from the tax thereby levied should be used for state purposes under direction of State authority to reimburse the counties for property, to-wit roads, which the State had taken over or to aid the counties in the construction of roads which the Legislature has designated as State roads and had directed the State Road Department to construct.

I append hereto and make a part hereof a financial statement furnished by the State Treasurer showing the status of collections, apportionments and disbursements of the gas tax collected under the provisions of Chapter 15659, Acts of 1931, as the same applied to those counties as to which litigation concerning this gas tax is now pending in this Court, from which it will be observed that as to the County of Washington here under consideration, it had $101,00 of bonds outstanding as of January 1, 1931; gas tax certified as due to the county under the provisions of Chapter 15659, Acts of 1931, were $79,756.98. There has been paid to or for the benefit of Washington County $283,296.50. Of this amount $235,539.52 has been turned over to the County Commissioners of Washington County and $47,756.98 only has been applied to the payment on bonded debt. There is now to the credit of the road and bridge bond fund from gas tax $4,551.10 and there is outstanding road and bridge bonds as of to date $94,000.00 (Sept. 20, 1937).

The bonded debt for roads and bridges is only $7,000.00 less than it was on January 1st, 1931, and the county has received from the gas tax fund almost three times as much as was certified as due it under the provisions of Chapter

15659, *supra,* and there is nothing due to the county under the provisions of that chapter.

The tabulation as to other counties will not be discussed in this opinion but the figures may be applied by the reader to the several counties as they appear. These figures are included herein for the purpose of showing the extent to which the provisions of Chapter 15659, *supra,* have been distorted and the funds arising from the gas tax applied otherwise than in accordance with the provisions thereof.

| | 1 | 2 | 3 |
|---|---|---|---|
| | R & B Bonds Outstanding Jan. 1, 1931 | Gas Tax Certified as due to Counties under Chapter 15659 | Amounts Paid to or for Benefit of Counties |
| Calhoun | $ 89.600.00 | $ 142,579.25 | $ 234.623.93 |
| Escambia | 1,633,333.34 | 2,625,621.65 | 1,072,149.25 |
| Gadsden | 271,500.00 | 535,738.50 | 480,805.98 |
| Jackson | 275,000.00 | 277,592.85 | 590,564.45 |
| Liberty | ---------- | 201,979.70 | 269,620.64 |
| Santa Rosa | 405,000.00 | 587,137.25 | 505,089.87 |
| Wakulla | 203,000.00 | 211,458.22 | 238,333.93 |
| Washington | 101,000.00 | 79,756.98 | 283.296.50 |

| | 4 | |
|---|---|---|
| | A Gas Tax Returned to County Com. | B Gas Tax Applied to payments on bonded debt |
| Calhoun | $218,537.14 | $ 16,086.79 |
| Escambia | 89,855.00 | 982,294.25 |
| Gadsden | 359,574.59 | 121,231.39 |
| Jackson | 490,221.98 | 100,342.47 |
| Liberty | 269,620.64 | ---------- |
| Santa Rosa | 345,145.13 | 159,944.74 |
| Wakulla | 154,647.67 | 83,686.26 |
| Washington | 235,539.52 | 47,756.98 |

| | 5 | |
|---|---|---|
| | A<br>Cash balances<br>to credit of<br>R & B Bonds—<br>Gas Tax | B<br>Cash balances<br>to credit of<br>R & B Bonds—<br>Other Funds . |
| Calhoun _____ | $ 4,615.50 | $ 135.38 |
| Escambia _____ | 50,869.29 | 14.72 |
| Gadsden _____ | 8,559.29 | 716.90 |
| Jackson _____ | 11,408.52 | 24,858.66 |
| Liberty _____ | 4,317.71 | 41.92 |
| Santa Rosa _____ | 67,996.83 | 26,313.23 |
| Wakulla _____ | 13,184.68 | 15,995.08 |
| Washington _____ | 4,551.10 | 4,252.16 |

| | 6 | 7 |
|---|---|---|
| | R & B Bonds<br>Outstanding<br>9/18/37 | Balance due<br>Counties<br>Under Chapter<br>15659 |
| Calhoun _____ | $ 60,800.00 | $_____ |
| Escambia _____ | 1,118,353.36 | 1,553,472.40 |
| Gadsden _____ | 205,000.00 | 54,932.52 |
| Jackson _____ | 275,000.00 | _____ |
| Liberty _____ | _____ | _____ |
| Santa Rosa _____ | 395,000.00 | 82,047.38 |
| Wakulla _____ | 200,000.00 | _____ |
| Washington _____ | 94,000.00 | _____ |

*Note*—Column 3 includes gasoline repaid to Counties under Chapter 15659 as well as that which has been paid them under sundry special Acts of Legislature 1933 and 1935 sessions. Jackson County—$280,373.46 of amount shown was paid to State Road License Fund. Wakulla County—$12,655.59 of amount shown was paid to State Road License Fund. All disbursements are made by Board of Administration Warrants issued by the Comptroller

against the State Treasurer as County Treasurer *Ex-Officio*. The foregoing as shown by the records of my office. This Sept. 20, 1937.

W. V. KNOTT,
State Treasurer as County Treasurer *Ex Officio*.

Much has been said (especially recently) about the sacredness of our Constitution. I am convinced that there are more people who praise and preach the Constitution than there are who respect and follow its precepts. But it is certain that when courts ignore its mandates and disregard its provisions and cease to hold to it as the guiding star, we shall soon be on the rocks where democratic governments are destroyed.

Being convinced that the Act involved violates the Constitution, I must hold that the motion to quash the alternative writ should be granted.

ELLIS, C. J., concurs in the conclusion.

BROWN, J., concurs.

BROWN, J (concurring specially with Mr. Justice BUFORD).—Funds raised by taxes levied and collected for one purpose cannot be derived to another purpose without valid legislative authority so to do. Such funds are held in trust by their custodian or custodians for the purpose for which the taxes were levied and collected. Oven v. Ausley, *et al.*, 106 Fla. 455, 143 So. 588.

The Constitution prohibits the Legislature from passing any special or local laws regulating the jurisdiction and duties of any class of officers, except municipal officers. Art III, Section 20.

As to those matters with reference to which the Constitution permits local or special laws to be passed, it is expressly provided that no local or special bill shall be passed unless notice of the intention to apply therefor shall have

been published in the locality where the matter or thing to be affected may be situated, which notice shall state the substance of the contemplated law and shall be published at least thirty days prior to the introduction into the Legislature of such bill, and proof of such publication must be entered upon the journals of both houses, unless the bill provides that it shall not become operative or effective until the same has been ratified by a majority of the qualified electors in an election called in the territory affected by such special or local law. Art. III, Section 21.

These sections of the Constitution were adopted by the people for very wise reasons, and should be given full force and effect by this Court.

In Whitney v. Hillsborough County, 99 Fla. 628, 127 So. 486, this Court held that an Act providing an additional and supplemental method for improving highways "in any County in the State of not less than 130,000 population according to the census taken by the State of Florida in the year 1925" was held to be a special or local Act, as it related to only one county and could not extend to any other county.

In the case of Jordan, as Clerk, *et al.,* v. State, 100 Fla. 494, 129 So. 747, this Court passed upon the validity of an Act of 1929 which provided that in a county having a population of between 40,000 and 43,000 the number of names to be annually placed in the jury box for the County Judge's Court should be not less than 750, which was a larger number than that fixed by the general statute on that subject. This Court held that even if the Act be considered a general law the classification of counties as made by the Act had no reasonable basis in the subject regulated, but was purely arbitrary, thus rendering the Act invalid.

In the case of Stripling v. Thomas, 101 Fla. 1015, 132

So. 824, this Court held invalid Chapter 15,585, Acts of 1929, which purported to prescribe the compensation of county officers in counties of not more than 27,160, and not less than 27,050 population according to the latest State census. It was there held that this classification, based on population, was not reasonable and appropriate with reference to the subject regulated and that the evident purpose of the enactment was to make it arbitrarily apply to a particular portion of the State and without a reasonable classification of a general subject of legislation. It was held the classification was arbitrary and had no reasonable relation to the subject regulated.

In the case of Anderson v. Board of Public Instruction, 102 Fla. 695, 136 So. 334, the fourth and seventh headnotes read as follows:

"4. Classification in law is the grouping of things in speculation or practice because, they agree with one another or in certain particulars, and differ from other things in those same particulars. Classification must always rest upon some difference which bears a reasonable and just relation to the Act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis. Whether or not a classification adopted is purely arbitrary or is a reasonable and practical one within the legislative discretion, is a subject for judicial review and determination in contested cases presenting justiciable controversies."

"7. House Bill No. 200XX, enacted at Second Extraordinary Session of the Legislature, 1931, approved by the Governor July 24, 1931, and providing for the calling and holding of special school district tax elections in all counties of the State of Florida having a population of not less than 145,000 and not more than 155,000, HELD: to be a

special or local law and not constitutionally enacted in accordance with Section 21 of Article III of the Constitution as amended in 1928, because no notice of intention to apply for passage of same appears to have been given, as required by organic law."

In the case of Latham v. Hawkins, 121 Fla. 324, 163 So. 709, we held that a statute limiting the compensation of officers of counties having from 35,000 to 45,000 population, thereby affecting only one county, was a local or special law. In the opinion in that case, which was written by Mr. Justice TERRELL, it was said:

"In State v. Sheppard, 84 Fla. 206, 93 So. 667; State v. Watkins, 88 Fla. 392, 102 So. 347; Flood v. State, 100 Fla. 70, 129 So. 851, and other cases of like import, we held that classifications to regulate the compensation of county officers in addition to being based on population must be influenced by other elements such as a prescribed portion of net income from the office, and that when made, the classification should operate alike on all similarly situated.

"If the Act under review is permitted to stand, then the Legislature can single out every county in the State and under the guise of a local law fix the compensation of county officers, arbitrarily and without reference to the organic mandate. General uniformity and operation would be destroyed and caprice substituted as a basis for determining the compensation of county officers. This should be done by general law treating the whole subject matter.

"In our view the decree of the chancellor was correct and is hereby affirmed. Knight v. Board of Public Instruction, 102 Fla. 922, 136 So. 631; State v. O'Quinn, 114 Fla. 222, 154 So. 166; Stribling v. Thomas, 101 Fla. 1015, 132 So. 824; Jordan v. State, 100 Fla. 494, 129 So. 747."

In the case of State, *ex rel*. Hunter, v. O'Quinn, 114 Fla. 222, 154 So. 166, we held a statute, authorizing County Commissioners in counties having a certain population to accept compromise settlement of tax sale certificates, unconstitutional. In the opinion in that case written by Mr. Justice WHITFIELD, it was said:

"Whether a classification for statutory regulation embracing less than all the counties of the State is permissible under Section 20 and 21 of Article III or under organic provisions and principles requiring equal protection of the laws and forbidding unjust discrimination depends upon the *nature of the subject regulated* as well as upon the reasonableness of the classification.

"Where a subject of statutory regulation is inherently statewide, or is under organic law regarded as being statewide, the statutory regulation may not be limited in its operation to less than all the counties of the State, when that would prevent the uniform operation throughout the State that is required by the intendments of the Constitution."

See also in this connection Carlton v. Johnson, 61 Fla. 15, 55 So. 975, and State v. Bailey, 124 Fla. 241, 168 So. 12. The latter Act purported to apply to all counties of not less than 18,500 and not more than 18.800. We held the Act void.

We have held so many statutes based on narrow differences in population to be local or special Acts and hence void if dealing with subjects prohibited by Section 20 of Art. III, or void, because, though dealing with a permissible subject of local legislation, the journals of the Legislature did not show that notice had been published as required by Section 21 of Art. III, that I will not encumber this opinion by citing them all.

What has been said above has reference largely to ques-- tions occurring in other cases in the group of cases which the court now has under consideration, but in this particu- lar case, known as the Washington County case, the Act in question is on its face an Act for the benefit or advantage of one particular county and hence such a local or special Act as is absolutely void in the absence of the publication of notice thereof prior to its introduction in the Legisla-' tion as required by Section 21 of Art. III. If this attempted diversion of State tax moneys to the Road and Bridge Fund of Washington County does not make it a *local* Act, then it is bound to be a *special* Act, and special Acts are also void unless notice of publication is given as required by the section of the Constitution above referred to.

Neither the petition for the alternative writ nor the alternative writ itself shows that notice of publication was published as required by the Constitution. The rule is that a pleading must be construed most strongly against the pleader.

Furthermore, if it is not to be regarded as a local Act, and is classed as a special Act, which for some reason is beyond the notice requirements of Section 21 of Art. III, it would seem that this Act must still fall within the con- demnation of Section 20 of Art. III which prohibits the Legislature from passing any special or local laws regulat- ing the jurisdiction and duties of any class of officers, except municipal officers. This Act changes the jurisdic- tion and duties of the members of the State Board of Ad- ministration and other state officers from what they were under the general law applicable to the whole State. Its title also clearly declares this purpose in express language.,

Furthermore, as pointed out by Mr. Justice BUFORD, this Act violates Section 2 of Art. IX of the Constitution in

, that it undertakes to apply State revenues for the current fiscal year, levied and collected for State purposes,, by sending a portion of the same into the road and bridge fund of a particular county, which fund is under the statute a transferable fund and may be used, and is thus capable of being used, for purely county purposes. For the reasons above stated I think the Act here under review is unconstitutional.

I agree with much that is said in the able opinion of Mr. Justice TERRELL in this case with regard to the power of the Legislature over all public roads in the State, whether they be State roads or county roads. My views on this subject were expressed in the case of Lewis v. Leon County, 91 Fla. 118, 107 So. 146, and I have never found any good reason for changing the views therein expressed. I have no doubt of the power of the Legislature by general laws to take over complete jurisdiction of the construction, maintenance and upkeep of all general public highways in the State, including those highways which are now under our present system, classed as county highways. Up until about twenty years ago, the Legislature placed this responsibility and burden entirely upon the counties but during the past twenty years the State has taken over and made into State highways thousands of miles of roads which were formerly left entirely to the counties to construct and maintain. In a general way, however, those roads which the State has not taken over and which the Legislature has not designated as State roads yet to be constructed, are still county highways in the sense that the counties are still responsible for their maintenance and management at county expense under the old system. It may be that as to those roads which the State Legislature has designated as State roads and has taken into the State's first, second or third prefer-

ential systems, though not yet constructed in whole or in, part, might again by general law be returned to the old system of entire county responsibility, or the Legislature might determine to construct and maintain the remainder of the designated State road system through the agency of the counties instead of through the agency of the State Road Department. Whether this could be done by special or local laws dealing with each county one at a time, or with some of the counties and not others, is a serious question with which we are not really here confronted. Certainly in such event, the local or special laws thus passed would have to be passed in such a way as not to conflict with Sections 20 and 21 of Art. III of the Constitution. It is a serious question whether such a situation could be dealt with under our Constitution by local or special legislation. That is a bridge which we need not cross until we come to it.

It seems to me that the Act here in question is on its face both a local and a special law and that in the shape in which it is presented to us it runs counter to both sessions 20 and 21 of Art. III, for the reasons hereinabove stated.

I therefore concur with Mr. Justice BUFORD that the motion to quash the alternative writ should be granted.

BUFORD, J., concurs.

## ON REHEARING.

WHITFIELD, J.—The wisdom and policy of the statutes here challenged as being unconstitutional are for legislative, not judicial, determination. The courts have no veto power. If the statutes do not clearly violate some identified provision of the Constitution, the courts have no authority to annul them. See Jackson Lumber Co. v. Walton County, 95 headnotes 1, 2, 3, pages 637-8, 95 Fla. 632, 116 So. 771; Jacksonville v. Bowden, 67 Fla. 181, 64 So. 769, L. R. A.

1916, 913 Ann. Cas. 1915D 99; State v. Duval County, 76 Fla. 180, 79 So. 692; Cotten v. County Com'rs, 6 Fla. 610.

"The control of all * * * public highways is vested in the State absolutely without any constitutional limitations or restrictions." State, *ex rel.,* v. Johnson, 71 Fla. 363, 72 So. 477.

See also Stewart v. DeLand-Lake Helen S. R. and B. Dist., 71 Fla. 158, 71 So. 42; State, *ex rel.,* v. Fearnside, 87 Fla. 349, 100 So. 256; Jackson Lumber Co. v. Walton County, 95 Fla. 632, 116 So. 771; Amos v. Mathews, 99 Fla. 1, 126 So. 308; Carlton v. Mathews, 103 Fla. 301, 137 So. 815.

The subject of public road construction is not regulated by the Constitution. Under the present and preceding Constitutions statutes of the State have imposed upon the counties and municipalities the duty of providing public roads by taxation or by bond issues. Within the last thirty years statutes have authorized special taxing districts in the counties to provide for improved public roads by bond issues and local taxation. In later years statutes have provided for State roads to be constructed and maintained by State officers through the levy of State excise taxes on sales of gasoline. Some public roads constructed by counties and districts have been taken over by the State as State roads; and compensation therefor to the counties and districts has been provided for by statutes in allocating to the counties portions of the State excise taxes on sales of gasoline in the State.

Chapter 15659, Acts of 1931, levies a "First Gas Tax" of three cents per gallon on sales of gasoline, to be placed in the "State Road License Fund" to be used by the State Road Department for State Road purposes; also a "Second Gas Tax" of three cents per gallon on sales of gasoline to

be placed in the "State Road Distribution Fund" to be allocated to the counties severally; the proceeds of one cent per gallon to the counties respectively in proportion as the area of each county bears to the area of the entire State; and the proceeds of one cent per gallon, in proportion as the population of each county bears to the population of the entire State; and the proceeds of one cent per gallon, in proportion as the amount due the several counties and districts therein by the State bears to the entire indebtedness of the State to all the counties and districts for roads taken over by the State. Such allocations of the three-cent excise tax public road fund, are under the above statute to be used (1) to pay the debt due by the State to the counties and districts therein for roads taken over by the State, (2) an equal sum for constructing preferred State roads in the counties severally by the State Road Department, (3) for credit to the State Road License Fund "to be expended as provided by law," Section 8, Chapter 15659.

In the year 1931 when Chapter 15659 was enacted and in subsequent years, statutes were enacted changing the uses of the funds allocated to counties under Chapter 15659, to meet diverse conditions in different counties. The changes made by the statutes authorize funds allocated to counties, and not presently needed for debt payments to the counties and districts therein, to be used by the county commissioners of the counties for needed public road purposes. See Chapters 15757, Acts of 1931, and 17967, Acts of 1937, and other like statutes in 1931, 1933, 1935, 1937; Sections 1167 (31) *et seq.,* Perm. Supp. of 1936 to C. G. L. 1927.

In some counties the amounts due by the State to the counties for the construction of roads taken over by the

State, are represented by long term county or district bonds that do not mature serially, but perhaps all mature at once in the years to come; and in some counties the amounts annually allocated to the counties by Chapter 15659 are in excess of current requirements for interest payments and for sinking fund purposes to pay the bonds at maturity. In some counties the need for public roads is greater than in others; and, because of large area and small population, some counties are unable to construct or maintain public roads to meet urgent requirements in the counties or to connect with main State roads. The Constitution does not prohibit statutes authorizing the use of State excise public road funds in any counties as may be determined by the Legislature in enacting statutes, all public roads in the State being a State purpose if so provided by statute.

The State excise tax public road fund is a State fund subject to statutory enactments as to its uses and disbursements for public road purposes. The order of uses and the official disbursements of the State excise tax public road funds allocated to the counties under Chapter 15659; (1) to pay debts due by the State to the counties and districts therein for roads taken over by the State, and (2) an equal amount for the construction of public roads in the counties by the State Road Department, may be changed as to any or all counties by later statutes, since such uses and disbursements are statutory and are not regulated by any provision of organic law.

The power of the State over counties and districts, and the duty of the counties and districts to provide for the payment of their outstanding bonds remain; and any diversion of the allocated funds that are needed to pay the interest and the principal of the bonds as they mature, may be remedied or prevented by appropriate legislation;

and any unlawful diversion of funds allocated to pay the debts of the State to the counties may be redressed by due course of law in appropriate judicial proceedings.

The statutes and the alternative writs do not command any moneys to be remitted to the counties, except such as shall be placed to the credit of the counties, or such as come into the hands of the Board of Administration from the second gas tax.

Chapter 15659, Acts of 1931, was enacted to meet the needs of good public roads in and to all parts of the State. Like all other statutes, it is subject to amendment, modification, extension or repeal by a later statute, which in its enactment or in its provisions, or in its operation, does not violate some identified provision of the State or Federal Constitution. No question of Federal grant or administration of public road funds is involved.

The Constitution does not forbid the amendment of a general law providing State excise tax funds for public road purposes by local or special laws; nor does the Constitution forbid the classification of counties in allocating such State public road funds to counties for public road purposes even though only one county is put in a class; nor are the allocations and methods of disbursement contained in Chapter 15659, Acts of 1931, immune from statutory changes.

Section 8, Chapter 15659, provides that:

"When any county in the State of Florida no longer participates under the provisions of this Act in the return to or for it of moneys contributed for the construction of State roads, as herein provided, and when these roads shall have been constructed which are at the time of the passage of this Act a part of the first, second and third preferential system of State roads within such county, then and

thereafter all funds thereafter derived from the Second Gas Tax theretofore allotted or appropriated to or for said county shall be transferred to the State Road License Fund of the State of Florida in the manner and to be expended as provided by law." See Chap. 15760, Acts of 1931, *et seq.*

Such provision of the statute apparently contemplates that changes in the administration of the proceeds of the "Second Gas Tax" to meet diverse conditions, may be made "as provided by law," after the primary use of the allocated funds has been satisfied.

If Washington County or any other other county has received more funds than were allocated to the county by Chapter 15659, (1) to pay for roads built by the county and taken over by the State, and (2) also an equal amount for the construction of preferential State roads in the county, than consistently with the above quoted paragraph of Section 8, Chapter 15659, that thereafter proceeds of the "Second Gas Tax" "shall be transferred to the State Road License Fund * * * in the manner and to be expended as provided by law," subsequent enactments may authoirze further portions of the "Second Gas Tax" to be remitted to the county for public road purposes, as the judgment of the Legislature may be expressed in statutes, even after all preferential State roads in the county "shall have been constructed."

In cases such as Stripling v. Thomas, 101 Fla. 1015, 132 So. 824; Jordon v. State, 100 Fla. 494, 128 So. 747, where the Constitution forbids special or local laws to be enacted on the stated subjects, laws arbitrarily classifying counties by population, so as to include only one county may be unconstitutional. But where, as here, local or special laws are *not forbidden* by the Constitution, and a stat-

ute regulating the subject may be either special or local or general, the Legislature is free to adopt either method; and classifications including only one county may be constitutional when the subject regulated is within the legislative discretion and judgment. See Givens v. Hillsborough County, 46 Fla. 502, 35 So. 88, 110 Am. St. Rep. 104; State v. Daniel, 87 Fla. 270, 99 So. 804. See also Anderson v. B. P. I.; 102 Fla. 695, 136 So. 334. In the Washington county case above, as shown by an amendment to the alternative writ, the law was advertised as a special or local law.

A statute regulating the duties of officers as an *incident* to the main subject of statutory regulation, does not violate Sections 20 and 21 of Article III of the Constitution which forbid special or local laws "regulating the jurisdiction and duties of any class of officers except municipal officers." Jackson Lumber Co. v. Walton County, 95 Fla. 632, 116 So. 771; Lainhart v. Catts, 73 Fla. 735, 75 So. 47.

In these cases the subject regulated is the transmission to counties of portions of a State excise tax public road fund, to be disbursed by county officers for public road purposes, which is thereby made a State expense; and merely incidental regulations of the duties of officers in making such transmissions and disbursements do not violate Sections 20 and 21, Article III, Constitution.

Statutory discriminations made in the judgment of the Legislature in the allocation and disbursements of the State excise tax public road fund to counties for public road purposes, are not subject to judicial review unless some identified provision of the Constitution is, beyond all reasonable doubt, violated by the classifications or discriminations made. Legislative responsibility in the enactment of laws for the allocation and disbursement of State public road funds to be used for public road purposes in any or all of

the counties of the State, cannot be checked by or transferred to the courts when there is involved only the policy or even the fairness of the allocations or the wisdom of the method of disbursement of such funds, no provision of the Constitution being thereby violated. The wisdom, economy and policy of statutes are for legislative decision. See Jackson Lumber Co. v. Walton County, 95 Fla. 632, 116 So. 771.

Any or all the public roads in any or all of the counties of the State are or may by statute be made a State purpose or expense; and statutes commanding State officials to transmit stated portions of the State excise fund levied for public road purposes, to one or more counties of the State, by necessary intendment operate as an appropriation by law of the stated portions of such funds to public road purposes in the counties respectively, without violating Section 4, Article IX, or Section 30, Article III, Constitution. Amos v. Mosley, 74 Fla. 555, 77 So. 619; Lainhart v. Catts, 73 Fla. 735, 75 So. 47. Such appropriations may be made without designating particular roads if the Legislature so enacts; and the expenditure of such appropriated funds may by statute be made by State or by county officials or other agencies when no provision of the Constitution is thereby violated. See State, *ex rel.,* v. Johnson, 71 Fla. 363, 72 So. 477.

The statutes in controversy here do not purport to authorize any portion of the State excise tax fund levied by statute for public road purposes, to be used for any *exclusively county* purpose; but the statutes contemplate or require the funds allocated to the counties respectively to be used for a public road purpose, which is, by the necessary intendments of the statutes, made a State purpose and expense, even though the public roads had not been ex-

pressly made a part of the State roads. The intended purpose cannot be frustrated by prior Act providing for the apportionment of moneys in the county road and bridge funds to the cities and towns in the counties respectively for municipal purposes, though by statute the maintenance of public roads may be made a county, district or municipal purpose, or a State purpose or expense.

It cannot be assumed that county officers will use the public road funds allocated to a county, for any other purpose than for public road purposes in the county; the county officers being authorized to use such funds only for public road purposes in the counties as a State expense and purpose under the statute. The Legislature has the power to have such allocated public road funds administered within the counties by county officers instead of by the State Road Department or other officials of the State, there being no organic regulation of the subject.

Violations of the several statutes in making disbursements of public road funds are not involved here; and such violations cannot be judicially anticipated or adjudicated in advance of such wrongful acts in the absence of proper parties and appropriate proceedings. The law affords remedies for wrongs committed; and the Constitution requires the courts to administer right and justice by due course of law. Section 4, Declaration of Rights.

The first paragraph of division (c) of Section 8, Chapter 15659, Acts of 1931, is modified by the last paragraph of such division (c) in that the *last* paragraph provides that (1) when the amount due a county for the construction of roads taken over by the State has been paid, and (2) when the preferential State roads in the county *"shall have been constructed,"* (not when *a sum equal to the sum* paid to the county for roads built by the county and taken over by the

State, has been allocated to the county for constructing preferential State Roads in the county by the State Road Department, then (3) the funds shall be transferred to the State Road License Fund "to be expended as provided by law."

This being so, funds that are credited to any county for road purposes until all the designated preferential State Roads in the county *"shall have been constructed,"* are subject to use in the county for such road purposes as statutes may provide.

Chapter 17967, Acts of 1937, provides that "whenever any moneys derived from gasoline taxes imposed under the laws of Florida shall be placed to the credit of Washington County," the Board of Adminsitration shall pay monthly to the county road and bridge fund of Washington County all moneys appropriated to the use of the State Road Department for the construction in the county of those State roads within the county which were heretofore designated as being a part of the first, second and third preferential system of State Roads. Such enactment is within the power of the Legislature.

The alternative writ contains the following: "5. That all amounts, furnished, advanced, paid out, contributed or expended by Washington County, Florida, or any Special Road and Bridge District or Special Taxing District of such County directly or through the State Road Department in the constructing and/or building of State roads referred to in the aforesaid act within such County has been returned to said County; which final refund was completed on the ___day of ___, A. D. 193__; and that thereafter under and by virtue of said Chapter 15659, Laws of Florida, A. D. 1931, Washington County, Florida, continued to participate in the distribution of the three cents of the second gas tax

as provided in Section 8 (b) of said Chapter, and that there has continued to accumulate for the use and benefit of Washington County, Florida, to August 1, 1937, $_____, and that there will hereafter continue from month to month to accumulate for the use and benefit of Washington County, Florida, certain sums of money, the exact amounts of which are unknown at this time but which will be known to the respondents from month to month from their official records," and commands the Board of Administration "to pay, disburse, distribute and administer the funds in possession of the Board of Administration in accordance with Chapter 17967, Acts of 1937." It is not shown that all the designated preferential State roads in the county "have been constructed;" and such roads may be constructed by county officials.

The Comptroller moves to quash the alternative writ on grounds going to the face of the statute and the writ; while the Governor and the State Treasurer express a willingness to comply with the statute and the writ. The pleadings do not present for determination the correctness of allocations and credits that have been made to the county from the "Second Gas Tax" fund.

In the Jackson County case the alternative writ in effect alleges that moneys derived from the "Second Gas Tax" and appropriated or allocated to Jackson County for public road purposes under Chapter 17053, Acts of 1935, are in the control or custody of the respondents, and the writ commands stated amounts to be remitted to the Board of County Commissioners for Jackson County.

The respondent Comptroller moved to quash the amended alternative writ upon points going to the statute and the writ.

Other respondents in effect aver that Chapter 17053, Acts

of 1935, operates to divert to the county for road purposes, funds that under Chapter 15659, Acts of 1931, are allocated to be used by the State Road Department in constructing preferential State Roads, and the effectiveness of Chapter 17053 is doubted.

The moneys referred to are State excise- public road funds and may be used for public road purposes as may be provided by statute; and in this case Chapter 17053 is not in necessary conflict with the last paragraph of division (c) of Section 8, Chapter 15659, Acts of 1931.

In the Calhoun and Liberty County cases the statutes are in the form of general laws; and as the subject regulated is the disposition of a State excise tax public road fund, which may be done by either a general or a special or local law, the classification by population is within the legislative judgment; and the motive of the Legislature in choosing to exert its lawmaking power through a general law, rather than a local or special law, is not for judicial consideration.

TERRELL and CHAPMAN, J. J., concur.

BUFORD, J.—Petitions for rehearing were filed in the cases of State, *ex rel.* Harrell, *et al.,* v. Fred P. Cone, *et al.;* State, *ex rel.* Garrett, et al., v. J. M. Lee, *et al.;* State, *ex rel.* Mayo, v. J. M. Lee, *et al.;* and State, *ex rel.* Phillips v. J. M. Lee, *et al.;* and other cases which are not now before us.

The first named case applies to Washington County; the second to Jackson County, the third to Calhoun County and the fourth to Liberty County.

The Court granted a reargument of the merits of the causes on petition for rehearing.

After full consideration of the matters presented in the reargument I am compelled to adhere to the position taken

by myself in opinions heretofore filed in these causes and, in addition to what was said in those opinions there is a further reason why the alternative writ should be quashed in the Harrell v. Cone case and in the Garrett v. Lee case, which is that even though Chapter 17,967, Acts of 1937, which applies to Washington County, should be held to be a valid Act, the records in the office of the State Treasurer, of which we must take judicial cognizance, show that there is no fund available as to which this Act is applicable. Section 1 of the Act provides:

"Whenever any moneys derived from gasoline taxes imposed under the laws of the State of Florida shall be placed to the credit of Washington County in the State of Florida, the State Board of Administration shall be and it is hereby authorized, empowered and directed to distribute and pay monthly to the County Road and Bridge Fund of said Washington County all moneys appropriated to the use of the State Road Department for the construction within the said county of those State roads within said county which were heretofore designated as and recognized by the State Road Department as being a part of the first, second or third preferential system of State Roads."

The only money derived from gasoline taxes imposed under the laws of the State of Florida which could be construed to have been placed to the credit of Washington County in the State of Florida is that authorized to be so placed by the provisions of Chapter 15659, Acts of 1931. Under the provisions of this Act the several counties received credit for the amount of money furnished, advanced, contributed, paid out or expended by the several counties, or Special Road and Bridge Districts, or other special taxing districts of such counties, in the building and construction of roads that were then designated as State Roads.

This allocation was required to be determined by certificates made by the Chairman of the State Road Department and the auditor of the State Road Department, which certificates were required to be audited by the Comptroller. It was then further provided in paragraph "C" of Section 8 of the Act:

"Whenever the amount furnished, advanced, paid out, contributed or expended by any county and/or special road and bridge district or other special taxing district of such county, directly, or through the State Road Department, in the construction or building of such State roads within such county, has been returned to such county, such county shall continue to participate in the distribution of the three (3c) cents of the Second Gas Tax as provided in Section 8 (b) hereof, so that thereafter a sum equal to the sum provided to be returned to or for such county under this Act shall be monthly paid into the State Road License Fund, and same is hereby monthly aprpropriated to the use of the State Road Department for the construction within said county of those state roads within such county which were at the time of the passage of this Act designated as and recognized by the State Road Department as being a part of the first, second or third preferential system of state roads, and which roads, to the extent of such funds, are to be constructed and built in such counties, respectively, by the State Road Department as soon as practicable as state projects and undertakings.

"Such funds shall be applied and used by the State Road Department for such purpose and not otherwise, and the expense of constructing said roads is hereby declared to be a legitimate proper state expense to be incurred for a general and state purpose."

So, under the provision of that law each county was to

receive reimbursement for the moneys it had expended in the construction of roads which were taken over as state roads at that time and, in addition thereto, the counties were allowed to participate in the fund to the extent of a sum equal to the sum provided to be returned to or for such county under the provisions of the Act which was appropriated to the State Road Department for construction of state roads in the particular counties and when the amounts found to be due a county for reimbursement of its contribution to the construction of roads above mentioned had been fully paid and an equal amount had been credited to the county to be used by the State Road Department in the construction of designated state roads, then the county no longer participated in the fund produced by the Second Gas Tax.

The records show that the aggregate of those funds has been consumed by Washington County.

The records show that there was certified under the provisions of Chapter 15659, *supra,* as due Washington County for reimbursement for contribution made to the construction of state roads taken over by the State the sum of $79,757.98 and that there has been paid over to the county $283,296.50, which is an amount more than double the amount which was certified as being due to the county for reimbursement.

So it is that there remains nothing to be placed to the credit of Washington County of the moneys appropriated to the use of the State Road Department for the construction within said county of those state roads within said county which were heretofore designated as and recognized by the State Road Department as being a part of the first, second or third preferential system of State Roads.

Chapter 17053, Acts of 1935, applying to Jackson County limits the funds affected thereby to the funds "derived from

the proceeds of the Second Gas Tax levied under Chapter 15659, Acts of 1931, and appropriated to and/or the use of the said State Road Department for the construction within Jackson County, Florida, of those roads within such county which were at the time of the passage of said Chapter 15659 designated as and recognized by the State Road Department as being part of the first, second or third preferential system of State Roads."

The records in the office of the State Treasurer show that Jackson County was entitled to receive as reimbursements for contributions made to the construction of state roads in the county the sum of $277,592.85 and in addition thereto there was to be credited for the use of the county a like sum to be used by the State Road Department for the construction of designated state roads in the county. It is this latter fund that the Act above referred to attempts to appropriate to the use of the county and to require to be paid over to the County Commissioners, but an amount in excess of both appropriations has already been paid over to the County.

The records in the office of the State Treasurer show that the County has already received $590,564.45, when the total amount which could have been, under any construction, placed to the credit of the County was $555,185.70.

So there is no fund available for the application of the Act above referred to.

The Acts under which both Calhoun and Liberty Counties claim the right to have the writ issued are what are generally called population Acts. Reference to the former opinions filed herein will show that the classification as to each Act is so narrow that it is in effect an Act applying only to the one county. There is, in my judgment, no reasonable basis for the classification. The provisions of

the Constitution constituting prerequisites for .the passage of special or local Acts were not complied with as to either of these Acts.

There can be no reason why Calhoun County or Liberty County should be given authority to acquire or handle the fund derived from the Second Gas Tax in a different manner from that required in other counties of the State.

I apprehend that if the Legislature had included in Chapter 15659, in paragraph 8 thereof, the words, "Provided, however, that the proportion of such tax pro-rated to or for the benefit of Calhoun County shall be paid over to the County Commissioners of Calhoun County and become a part of the road and bridge fund of said county and be expended by said Board as provided by law," such provision would have been held inoperative and invalid by this Court when we had that Act under consideration in the case of Carlton v. Mathews, 103 Fla. 301, 137 Sou. 715, because the purpose of that Act was to provide a fund for acquiring, constructing and maintaining a comprehensive and uniform system of State Highways throughout the State of Florida and such provision would have constituted a discrimination in favor of one county and against all other counties without any reasonable basis for such discrimination.

I think it is not sufficient to say that the Acts may be held valid because they in effect amend a general law. Practically every special or local Act amends or supersedes the general law in its application to the territory affected by the special or local Act and the Constitution makes no exception to special or local Acts, the purpose of which is to amend the general law. It prohibits the enactment of such special or local Acts without complying with the provisions of the Constitution and when the Legislature assumes to pass an Act when those constitutional provisions have not

been complied with, the enactment amounts to no more than a scrap of paper and can have no effect for any purpose, because it never becomes a law.

Chapter 6537, Acts of 1913, is a comprehensive legislative Act providing for the construction and maintenance of a system of public roads as county projects throughout the State. Later Acts have established a comprehensive system of State Roads throughout the State. The Road and Bridge Fund of a County is a repository for funds to be used in the construction and maintenance of county roads under the provisions of Chapter 6537, *supra,* and amendments thereto.

It, therefore, appears to me that the distinction between County Roads and State Roads is definitely fixed by statute; that County Roads are primarily for county purposes and that State Roads are primarily for State purposes; that the Road and Bridge Fund is a fund provided for a county purpose and, therefore, it is not within the power of the Legislature to by special Act appropriate funds produced by the levy and collection of a State tax to the County Road and Bridge Fund to augment that fund for the benefit of that particular county, although the State may have some sovereign interest in the improvement of County Roads.

I think the rehearing should be denied and the alternative writ in each case should be quashed.

ELLIS, C. J., and BROWN, J., concur.