STATE EX REL. A. J. RUSSELL, PLAINTIFF, VS. WILLIAM D. BARNES, COMPTROLLER, DEFENDANT—MANDAMUS.

1. The salary of the Superintendent of Public Instruction has been, since January 1st, A. D. 1887, the day on which the Constitution framed in 1885 went into effect, $1,500 per annum, as prescribed by the 29th section of the Executive Article. There is nothing in the Constitution that defers the operation of the section named in its application to such officer, to the first Tuesday after the first Monday in January, 1889, the day fixed for the installation of officers chosen, at the election in November, 1888.

2. The Constitution and laws impose upon the Comptroller the duty of auditing the accounts of all officers, and provides that no funds can be disbursed by the Treasurer, except upon the order of the Comptroller, countersigned by the Governor. Where the Constitution prescribes the amount of an officer's salary, and the Legislature has appropriated a sum more than sufficient to pay it and other salaries of the same class, the Comptroller neither errs in his judgment nor transcends his authority in refusing to allow such officer a different amount than that prescribed by the Constitution. *Commissioners vs. State, ex rel. Patton,* 24 Fla., 55, *distinguished.*

This is a case of original jurisdiction.

The facts of the case are stated in the opinion.

*D. S. Walker, Jr.*, for Plaintiff.

*R. B. Hilton* for Defendant.

RANEY, J.: The relator was commissioned in the year 1885 as Superintendent of Public Instruction under the Constitution of 1868, as amended in 1871. That instrument fixed the salary of such Superintendent at $2,000 per annum. Relator contends that he is entitled to be paid at this rate, and the Comptroller having refused to allow him more than $1,500 per annum for the year 1887, he asks for a mandamus to compel the issuance of a warrant on the State Treasurer for the excess, $500. He contends also that the legislation of 1887 provides for his payment for that year at the rate of $2,000.

The return of the Comptroller to the alternative writ states that the present Constitution adopted in 1886, fixes the salary at $1,500 and that relator has been paid this sum for the year 1887 ; and further, that while the Legislature in the act making appropriations for the years 1887 and 1888 has provided a sufficient sum to pay to the relator a salary of two thousand dollars per annum, it has not been specifically declared by the legislation that he should receive such amount.

The first question to be decided is whether the new Constitution fixes the salary of relator. It is contended in his behalf that the salary of $1,500 is prescribed by it for the officer who may be elected under its provisions, and has no application to the present office or its incumbent.

Section 20 of the 4th or Executive Article of the New Constitution is as follows : " The Governor shall be assisted by administrative officers as follows: A Secretary of State, Attorney-General, Comptroller, Treasurer, Superintendent

of Public Instruction and Commissioner of Agriculture, who shall be elected at the same time as the Governor, and shall hold their offices for the same term ; *Provided*, That the first election of such officers shall be had at the time of voting for Governor, A. D. 1888." By section 28 of this article it is provided that " the administrative officers of the Executive Department shall be installed on the same day as the Governor."

Section 2 of the same article provides that " the first election for Governor under this Constitution shall be held at the time and places of voting for members of the Legislature and State officers in A. D. 1888, and the term of office of the Governor then elected shall begin on the first Tuesday after the first Monday in January after his election." The Governor's term of office is four years from the time of his installation.

The time of voting for members of the Legislature in the year 1888, is the first Tuesday after the first Monday in November.

The 29th section of the same article is (substituting figures for words in some cases) as follows: 'The salary of the Governor of the State shall be thirty-five hundred dollars a year, of the Comptroller $2,000, of the State Treasurer $2,000, of the Secretary of State $1,500, of the Attorney-General $1,500, of the Commissioner of Agriculture $1,500, of the Superintendent of Public Instruction fifteen hundred dollars a year ; *Provided*, That no administrative officer of the Executive Department shall receive any additional compensation beyond his salary for any service or services rendered this State in connection with the Internal Improvement Fund or other interests belonging to the State of Florida ; *Provided further*, The Legislature may after eight years from the adoption of this Constitution increase or decrease any or all of said salaries.

The new Constitution having been ratified by the people in November, 1886, it under Ordinance No. 1, went into effect on the first day of January, A. D. 1887.

The first section of Article 18, the "Schedule," is as follows: The Constitution adopted A. D. 1868, with amendments thereto, is declared to be superseded by this Constitution; but all right, actions, claims and contracts, both as respects individuals and bodies corporate, shall continue to be as valid as if this Constitution had not been adopted. And all fines, taxes, penalties and forfeitures due and owing to the State of Florida under the Constitution of 1868 shall enure to the use of the State under this Constitution.

The effect of the general declaration of supercedure contained in the above section would, if standing alone, be to do away entirely with the Constitution of 1868 as our organic law, upon the new one coming into operation on the first day of January, 1887; and its actual effect was and is to do away with the old charter of government except in so far as any other part of the new instrument may show a clear intent to continue any feature of the old. With such general abrogation would fall all rights which were dependent upon the old instrument, and not vested rights or matters of contract protected by the Constitution of the United States.

There is nothing in the saving clause of the above section of the schedule that to our minds is applicable to an office. The second sentence of such saving clause was, as is evident from reading it, intended not to protect individuals against the State from any loss by such supercedure but to protect the State against any loss :

A constitutional office is not, as against the action of representatives of the people, assembled for the purpose of

revising the Constitution upon which such office is based, either a *right*, an *action*, a *claim* or a *contract ;* and besides this if it had been the intention of the framers of the instrument that any part of the above saving clause should apply to offices or officers, the other provisions in the schedule, and elsewhere, as to existing officers, would have been unnecessary. Cooley Cons. Lims., 334.

A presentation of the special provisions as to officers at the time of the new instrument coming into operation is necessary.

Section 3 of the Schedule Article is that " all persons holding any office or appointment at the ratification of this Constitution shall continue in the exercise of the duties thereof according to their respective commissions or appointments and until their successors are duly qualified ; unless by this Constitution otherwise provided." Supplementing this provision section 5 of the same article ordains that " all vacancies occurring by limitation of terms before the general election in 1888 shall be filled as provided for by law under the Constitution of 1868."

The Constitution of 1868, section 17, Article V, as amended by Article II of amendments of 1871 (see acts of 1871, pp. 52, 53,) provided that the Governor should be assisted by a Cabinet of administrative officers consisting of a Secretary of State, Attorney-General, Comptroller, Treasurer, Commissioner of Lands and Immigration, Superintendent of Public Instruction and Adjutant-General. They were appointed by the Governor and confirmed by the Senate and held their offices for the same time as the Governor, and until the qualification of their successors. The Governor's term was four years from his installation on the first Tuesday after the first Monday in January, or from such time till the installation of a successor on a similar day four years afterwards.

These Cabinet officers were then, according to their commissions under the old Constitution to continue in the exercise of the duties of their respective offices during the term of the Governor appointing them, and until their successors qualified. The present Governor was elected in 1884 under the old Constitution, and was installed on the first Tuesday after the first Monday in January, 1885; and under such Constitution would have held till the installation of his successor on the similar Tuesday in January, 1889, and the Cabinet officers appointed by him would have held, under the same instrument, for the remainder of his term and until their respective successors should qualify.

It will be perceived by comparing section 20 of Article IV of the new Constitution and section 17 of Article V of the old, as they are given above, that the Adjutant-General and the Commissioner of Lands and Immigration are not mentioned in former section as administrative officers in the new instrument.

Provision is however made for an Adjutant-General as a militia officer by section 16 of the above article (5) of the new instrument, and by a proviso to this section it is expressly declared that " this Constitution shall work no vacancy in the office of Adjutant-General, as now constituted until the expiration of the present term."

There is also a special provision as to the Commissioner of Lands and Immigration in the new Constitution, section 8 of the Schedule being as follows: Upon the ratification of this Constitution the Commissioner of Lands and Immigration shall assume the office of Commissioner of Agriculture and his duties as such shall be prescribed by the first Legislature assembled under this Constitution.

Whether it be that section 3 of the Schedule set out above continues temporarily or until the officers chosen at the recent election of November 6, 1888, shall qualify, the

*office* of Superintendent of Public Instruction with the duties assigned to it by section 6 of Article VII of the Constitution of 1868 or, on the other hand, the purpose of such section of the Schedule was in so far as the office in question is concerned merely to continue the person who was Superintendent of Public Instruction " at the ratification " of the new instrument, as the incumbent of the office of the same name as it is made a part of the permanent government under the new instrument by the 25th section of the Executive Article, such office and officer are such *under the new Constitution*, and not an office and officer under the old instrument. Upon the former assumption they are such because the mentioned section of the Schedule continues both the office and officer temporarily as a part of the new government; and under the other or second hypothesis they are such because the new Constitution, including the 25th section of the Executive Article went into operation January 1st, 1887, and the old officer is made the incumbent of the office with its duties as they are declared by the 25th section of the Executive Article.

Being therefore an officer under the new instrument, if this new instrument provides what shall be the salary of such officer we have no right to go elsewhere for authority as to what such salary shall be. There is nothing upon the subject of salary or compensation, in that section of the old Constitution which defines the duties of the Superintendent of Public Instruction; Nor is there anything as to salary or compensation in any section of the old Constitution defining the duties of any cabinet or administrative officer. It is plain that the provisions of the 29th section tion of the Executive Article of the new instrument set out above are sufficient to cover the several officers named,

6

whether the offices be temporary or permanent. If until the qualification of the elective administrative officer we are to read the 6th section of Article VII of the old instrument in the place of, or as the 25th section of the 4th article of the new instrument, there is still nothing in the new that authorizes us to read, or substitute the 4th section of the 16th article of the old, providing the Superintendent of Public Instruction shall be paid a salary of $2,000 a year, for the 29th section of the 4th article of the new, which provides that the Superintendent of Public Instruction shall be paid $1,500 a year. The view that the third section of the schedule continues the office of Superintendent of Public Instruction with the old duties, has the effect to interpolate the section of the old Constitution defining those duties into the new and make it read, in effect, that until the installation of the elective officer the duties of the officer shall be as prescribe by that section, and that afterwards the duties shall be as prescribed by the new section. Suppose it was so written in the Constitution, can it be said that this would limit the effect of the plain declaration of the 29th section mentioned above that the salary of the Superintendent of Public Instruction shall be $1,500? This section prescribes the salary of the officers it names, whatever their duties, from the time it becomes operative, and we are unable to find anything that postpones its operation after the first day of January, 1887.

It is said by counsel for relator in his brief that the office of Lieutenant-Governor is abolished, but he is retained in office, and the office of the Adjutant-General as constituted under the old Constitution is radically changed, but that he too is retained, and both these officers are paid their salaries as provided by the old Constitution, and that this is because they are retained in office. The fact he

says, that salaries are not provided for these officers under the new Constitution but are provided for the relator and others under (see *supra*, Sec. 17, Art. V) is no reason why the former should be paid the salaries under the old Constitution and the others not so paid; a rule, he says, which is good for one is good for all, and if the Lieutenant-Governor and Adjutant-General are so payable, it is by legal principle establishing the justice of the matter, and under that principle the other officers must stand as they do.

If the Lieutenant-Governor is entitled to receive the pay prescribed for him by the old Constitution until the expiration of his term, it results from the continuation of the office for the time stated, by the language of section 4 of the schedule, viz: " Nothing contained in this Constitution shall operate to vacate the office of Lieutenant-Governor until the expiration of his present term," and from the *silence* of the new Constitution upon the special matter of his compensation, wherefrom it may be inferred either that the meaning and purpose of the Constitution was that the office, with all its former constitutional and statutory incidents, should be continued, or that the office should be continued, and the matter of its salary left to legislative discretion unrestrained by constitutional provision. If there was express prescription in the new instrument of the Lieutenant-Governor's salary as there is of that of the Superintendent of Public Instruction, there would be no room for contention that the old instrument regulated it; nor could the Legislature fix it. The same is true of the Adjutant-General.

The prescription of salaries by the 17th section of the 5th Article (*supra*) is a rule prescribed as to the officers it names, and none others, and the omission to prescribe in it the salary of any other State officer does not make it the less

a rule as to them, nor control the question of the pay of officers not named in it ; it is a reason why the officers named in it should be paid no more and no less, but it is not a reason that other officers should not be paid more or less. Being applicable to the officers it names, as we have shown above, it represents the sovereign will of the people as to the justice of the compensation it allows, and no other opinion on this subject, however much we may sympathize with it individually, can be given any effect. The new Constitution has prescribed the salaries of those offices which it retains permanently, but has said nothing expressly upon the subject of the compensation of those which it retains only temporarily.

The argument that the view advanced by us imputes to the framers of the Constitution a preference as to the administrative or cabinet officers retained temporarily over some of those retained permanently is not admissible. This regulation of salaries must be regarded as the expression of the best motives and soundest judgment of the members of the convention, and likewise of the people who adopted the instrument as our organic law. The fact that the convention and the people thought that there was a necessity for a change in the salaries of the officers retained as part of the new charter is itself a reason why this judgment should be enforced as soon as any other features of the new instrument, and if they had postponed its operation till 1889 we could not conclude that they had done so for any reason of mere personal consideration for the gentlemen occupying the offices at the time of the framing of the Constitution or of its going into effect. The fact that no change was made as to the compensation of the State officers temporarily continued, must likewise be accounted for, not as an oversight, but as the result of the exercise of the best judgment of the framers of the instrument.

II. It is made the duty of the Comptroller to examine and audit the accounts of the officers of this State, sec. 23, Art. IV, Const., and sec. 4, p. 196, McC.'s Digest, and no funds can be disbursed by the Treasurer except upon the order of the former officer, countersigned by the Governor, Sec. 24, Art. IV, Const. of 1885 (see secs. 4 and 5, Art. VII, Const. of *1868* as to its provisions on same subject). The Comptroller has refused to allow the relator at the rate of $2,000 per annum as his salary for the year 1887, or to allow or draw his warrant on the Treasury for more than at the rate of $1,500 per annum. The appropriation out of which the relator claims to be paid at the rate stated is in sec. 1, chap. 3687, Acts of 1887, and is as follows: " That the following sums be and they are hereby appropriated for the payment of the following expenses of the government for the year 1887 : For salaries of the administrative department, eighteen thousand dollars ($18,000)." Relator contends, upon the authority of Patton vs. County Commissioners of Franklin county, 24 Fla., 55, that the Comptroller can not raise the question of the unconstitutionality of the legislation in question.

The Comptroller does not contend in his return to the alternative writ that the above appropriation is entirely void, but says that the Constitution fixes the relator's salary at $1,500 per annum, amounting to a quarterly payment of $375, and that warrants have issued regularly to relator for these amounts as they became due. He further says that while the Legislature has provided a sufficient sum to pay the relator a salary of $2,000 a year, it has not specifically declared that he shall be paid that amount of salary.

The Constitution and law have imposed upon the Comptroller the duty of auditing the relator's claim and draw-

ing a warrant for the amount found to be due him. This duty necessarily involved his deciding upon the amount payable to relator as a salary, and he has decided it. If there was any conflict between the Constitution and statute as to the amount payable, he could not avoid a decision; it was within the official duty imposed. Relator questions the correctness of the decision and applies to us for relief; and the parties have submitted the question for our adjudication. If the Comptroller has gone beyond his official duty or prerogative by considering any question not involved in the performance of his duty, or if he had erred in his judgment as to the amount of salary payable, we should say so. We do not think that he has done either. A consideration of the decision in County Commissioners vs. Patton will discover that we held that the Commissioners neither had any personal interest or official duty under the statute then under consideration involving in any way the legality of the election in question.

Our conclusion is that the relator is not entitled to a peremptory writ, and the judgment will consequently be that the respondent go hence without day and recover his costs, which will be taxed by the Clerk. It is so ordered.