47 So.2d 317 (1950)
CITY OF PENSACOLA
v.
KING et al.
Supreme Court of Florida, en Banc.
February 28, 1950.
On Rehearing July 18, 1950.
*318 Ausley, Collins & Truett, Tallahassee, for relator.
Lewis W. Petteway, Tallahassee, D. Fred McMullen, Tampa, and Guyte P. McCord, Jr., Tallahassee, for respondents.
TERRELL, Justice.
Pursuant to Section 323.03, F.S. 1941, F.S.A., Yellow Cab and Rental Company of Pensacola, Inc., applied to the Florida Railroad and Public Utilities Commission, hereinafter referred to as the Commission, for a certificate of public convenience and necessity to operate as a common carrier of passengers between the City of Pensacola and designated points in the adjoining suburban territory. The Commission scheduled a hearing on the application. The City of Pensacola then applied for writ of prohibition from this Court to enjoin the Commission from entertaining said *319 application or proceeding with the scheduled hearing. There was a motion to strike and a return to the suggestion for writ of prohibition. Both challenge the validity of Chapter 24806, Acts of 1947.
The preliminary question presented is whether or not the Commission can lawfully challenge the constitutional validity of Chapter 24806.
Section 35, Article V of the Constitution, F.S.A., authorizes the legislature to clothe the Commission with judicial powers in "all matters connected with the functions of their office." Such an authorization would not permit the Commission to adjudicate the constitutional validity of Chapter 24806 and so far as the record discloses, it has not attempted to do so, nor has it expressed any intention so to do. It called a hearing on the application of Yellow Cab and Rental Company but the city brought this proceeding in prohibition before the date set for the hearing arrived. There is certainly no reason why the Commission should not proceed to the consideration and administration of other matters scheduled for the hearing.
The circumstances under which an executive or an administrative officer may challenge the constitutional validity of a legislative act has provoked a great deal of litigation in this country. In State ex rel. Harrell v. Cone, 130 Fla. 158, 177 So. 854, this Court held that if such an act requires an officer to perform duties affecting him personally or imposes duties on him that he fears will cause him to violate his oath of office, or where he is charged with the control and disbursement of public funds, his official capacity gives him an interest in its execution that he may challenge the validity of the act.
In Steele v. Freel et al., 157 Fla. 223, 25 So.2d 501, we held the rule to be well settled in this jurisdiction that a ministerial officer may not question the constitutionality of a legislative act without a showing that he will be injured in person, property or some material right by its enforcement. The Cone case points out other conditions under which a ministerial officer may raise the constitutionality of an act of the legislature. State ex rel. Florida Portland Cement Co. v. Hale, 129 Fla. 588, 176 So. 577, points out another case in which it may be done.
Section 350.63, F.S. 1941, F.S.A., clothes the Commission with such judicial powers as are essential to enforce or perform any function, duty or power conferred upon them as Commission. It appears that for the purpose of the act, Chapter 24806, among other things, authorizes the Commission to determine that a greater or lesser area then ten miles from the corporate limits of the city constitutes its adjoining suburban territory. To determine this and perhaps other questions, it may become necessary for the Commission to have a hearing requiring the expenditure of public funds. The Commission may determine when it is necessary to conduct a hearing for this or any other purpose contemplated by the law and we think these are such as to bring it within the rule stated and authorize it to challenge the validity of the Act.
The crucial question in the case is whether or not Chapter 24806, Acts of 1947, is constitutional.
Chapter 24806 authorizes the City of Pensacola to regulate firms, corporations and auto transportation companies operating motor vehicles, other than taxicabs, engaged in the business of transporting passengers within the corporate limits of the city and in the adjoining territory. The adjoining suburban territory is defined as that within a distance of ten miles from the corporate limits of the city, unless a different determination is made by the Commission, such determination to be subject to judicial review. The authority and jurisdiction of the city in this does not impair the power of the Commission to regulate the business of transporting passengers to or from points outside said suburban territory to and from fixed terminals within the city and the adjoining suburban territory.
It is first contended that Chapter 24806 is a local law, violative of Sections 20 and 21, Article III of the Constitution in that it regulates the duties and jurisdiction of a class of officers other than municipal officers. In fine, the Commission contends *320 that the effect of Chapter 24806 is to divest it of jurisdiction to regulate transportation in the area around Pensacola and vest that authority in the city. State ex rel. Reese v. Carter, 160 Fla. 180, 34 So.2d 35, is relied on to support this contention.
In State ex rel. Reese v. Carter this Court was confronted with Chapter 24992, Special Acts of 1947, which created a taxicab commission for the City of Tampa and clothed it with power to regulate the operation of taxicabs over the highways of the city and the adjoining suburban territory for a distance of three miles from the city limits. In other words, it defined an area that was solely under the jurisdiction of the commission and placed it under a separate commission created by the act. Chapter 24806 did no such thing, but instead it authorized the City of Pensacola to regulate those engaged in the auto transportation of passengers other than by taxicabs within its limits and for an area joining the city ten miles from its corporate limits. The act also authorized the Commission to determine the area embraced in the adjoining suburban territory within the meaning of Section 323.29, Florida Statutes 1941, F.S.A. The act assaulted, further provides that it should in no sense impair the jurisdiction of the Commission to regulate the business of passenger transportation from fixed terminals within the city and the adjoining suburban territory and from points beyond the adjoining suburban territory to fixed terminals within the city.
Chapter 24806 does little more than reenact what has been the law from the beginning of auto transportation regulation. Section 30 of Chapter 14764, Acts of 1931, being the first act authorizing the Commission to regulate auto transportation, specifically exempted from Commission's jurisdiction, persons, firms or corporations operating motor vehicles within the corporate limits of any city or town or the adjoining suburban territory. The original act has been several times amended but this provision has been consistently retained so the act in question added nothing to the jurisdictional aspect except to provide that the Commission determine the extent of the area embraced in the "adjoining suburban territory." The act was prefaced with a finding by the legislature that the boundaries of the city had not been changed for more than one hundred years, that the area ten miles from the city limits had become continuously settled without intervening rural areas and that the city should be clothed with the power authorized by the act to assure adequate transportation facilities. The passage of the act was prompted by a combination of local conditions which the legislature evidently concluded required better transportation facilities.
It is true that Chapter 24806 is local in its application but it was advertised in the manner prerequisite to the passage of a local law, and while in effect it imposed on the city the responsibility for regulating local transportation in the area defined, that was a mere incident to the main purpose of the act. It is accordingly our view that the act is not vulnerable to the assault made on it. It dealt with a purely local operation that had become snarled because of conditions recited in the preamble to the act. The wisdom of providing a scheme of regulation like that provided is for the legislature to determine.
The power of the legislature to extend the regulatory function of the city beyond its corporate limits is too well settled to require supporting authority. The exercise of powers beyond the corporate limits of the city, sometimes called extra-mural, have frequently been authorized by the legislature in the interest of its general police powers. The courts have repeatedly held that the legislature may authorize a municipality to regulate business within a reasonable area beyond its corporate limits and to exact the payment of a reasonable sum as license for the protection of the life, health, property, good order and general welfare of the community. McQuillen on Municipal Corporations, 2d Ed. Rev. Vol. 3, Sec. 952.
The act under review provides a field of operations for both the City of Pensacola and the Commission. It vested in the city authority to regulate an intra area service embracing the city and suburban territory as defined and reserved to the *321 Commission power to regulate the intramural service whether to or from the area, including the power to determine the bounds of the adjoining suburban territory. There is a clear line of demarcation between the jurisdiction of the city and the Commission and no reason is shown why both should not operate harmoniously. There is no merit to the contention that as a police measure the act is devoid of proper relation to the public health, morals, safety and welfare of the city. From the inception of auto transportation regulations, the legislature has recognized that municipalities have problems peculiar to themselves that each must deal with. Since the primary function of the Commission is state wide, the function of the municipality and the Commission, as in this case, may at times overlap. The law so recognizes, but when this is the case, the problem should be resolved so as to allow each the field of operation designed for it.
It follows that the writ of prohibition will be denied insofar as it attempts to interfere with the Commission in the performance of the duty delegated to it under Chapter 24806 or any other act of the legislature as pointed out in this opinion. Insofar as the power delegated to the city is shown to be trenched on, the writ of prohibition is granted.
It is so ordered.
ADAMS, C.J., and CHAPMAN, THOMAS and HOBSON, JJ., concur.
SEBRING and ROBERTS, JJ., not participating.

On Rehearing
PER CURIAM.
A rehearing having been granted in this cause and the case having been further considered upon the record and upon briefs and argument of counsel for the respective parties; it is thereupon ordered and adjudged by the Court that our Opinion filed February 28, 1950 is reaffirmed and approved.
ADAMS, C.J., and TERRELL, CHAPMAN, THOMAS, SEBRING and HOBSON, JJ., concur.