70 So.2d 347 (1953)
BARR
v.
WATTS et al.
Supreme Court of Florida. En Banc.
December 8, 1953.
Rehearing Denied February 16, 1954.
*348 Mark R. Hawes, Gainesville, for relator.
E. Dixie Beggs, Pensacola, for respondents.
Darrey A. Davis, Miami Beach, and L. William Graham, Gainesville, Fla., for the Florida Bar as amicus curiae.
ROBERTS, Chief Justice.
This is an original proceeding in mandamus by which the Relator, Virginia Searcy Barr, seeks to compel the Respondents, constituting the State Board of Law Examiners, to allow her to take the examination for admission to the general practice of law in this state, as required by Section 454.031(3), Florida Statutes, F.S.A. The Relator bases her right to be allowed to take the examination on the provisions of Chapter 26993, Laws of Florida, Acts of 1951, which provides that persons of specified qualifications shall be entitled to take the bar examination. The qualifications so specified are not the same as those specified by Rules 1(b) and 1(c) of the Rules Governing Florida Bar examinations, 31 F.S.A., heretofore adopted by this Court.
In her petition here for the alternative writ, the relator alleged that she possesses all of the qualifications prescribed by Chapter 26993, supra; that she made application to the respondents for permission to take the bar examination given by the respondents in October 1952, in full compliance with all the rules and regulations respecting such applications; and that her application was rejected by the respondents. The alternative writ issued as prayed, and a return thereto has been filed by the respondents.
In their return, the respondents take the position that the Legislature, by Chapter 26655, Laws of Florida, Acts of 1951, expressly recognized this court's exclusive power to regulate admissions to the Bar of this state and "withdrew from the field." It is also alleged that such power, if any, as the Legislature may have to legislate in this field cannot be exercised to lower the standards prescribed by this court; and that, in any event, Chapter 26993 is "invalid as special and discriminatory legislation."
For reasons which will be hereinafter stated, we do not think the respondents have any standing to attack the constitutionality of Chapter 26993 on the ground that it is special legislation. But we think that, in the circumstances here, the public interest requires that this court answer the charge that the Legislature "expressly recognized" this court's "exclusive power to regulate admissions to the bar * * * when it withdrew from the field *349 by the enactment of Chapter 26655," supra. There is inherent in this statement the accusation that the Legislature, in so prescribing qualifications for applicants for the bar examination, has attempted to usurp the functions and invade the province of this court.
The question of whether the Legislature has withdrawn from the field of regulating admissions to the Bar answers itself. The Act by which it is claimed that the Legislature "withdrew" from this field, Chapter 26655, supra, was enacted at the same session of the Legislature as was Chapter 26993, the Act upon which the Relator relies  and Chapter 26993 was enacted after the passage of Chapter 26655. Clearly, then, it cannot be said that the Legislature intended to withdraw from the field.
Nor does the language of Chapter 26655 require such a construction. Chapter 26655 provides, in Section 1, only that "The Supreme Court * * * shall have the power to prescribe from time to time the requirements, qualifications and standards to be met and procedures to be followed by all persons for admission to practice law in any of the Courts of the State of Florida or its political subdivisions." (The emphasis is supplied.) Again, in Section 2, the Act provides that "The Supreme Court of the State of Florida shall have the power to prescribe and establish additional duties, powers and procedures for the State Board of Law Examiners * * *; provided, that in making up the questions for examination the State Board of Law Examiners shall meet with and consult with a committee consisting of the deans of all of the accredited law schools in the State of Florida." And in Section 3 of the Act, the Legislature, in effect, repealed what has become known as the "diploma privilege" and provided for the preservation of this privilege to persons "enrolled on or before the 25th day of July, 1951, as a student in any law school chartered by and conducted within this State or approved by the Supreme Court".
Thus, the Legislature, in the very Act which it is claimed amounted to a withdrawal from the field, did in fact legislate in this field. It cannot, then, be seriously contended that the Legislature has withdrawn from the field of regulating admissions to the Bar of this state  and this is without regard to the question of whether one particular legislative body could effectively abrogate one of its legislative powers for all time and so as to bind all succeeding sessions of that body.
The question then becomes: Does the Legislature have the power to regulate admission to the practice of law in this state, or is this power exclusively the province of this court? If the Legislature has no power or authority in this field, then the Respondents themselves, as members of a Board which is the creature of the Legislature, find themselves in a somewhat anomalous position, with no official existence.
But the logic of the situation requires no such reductio ad absurdum.
There can be no doubt that this court has inherent power to regulate the practice in the courts of this state, including the right to prescribe the qualifications for admission to the Bar of this state. And we have repeatedly so held. See Petition of Florida State Bar Association, 134 Fla. 851, 186 So. 280. But the concurrent jurisdiction of the Legislature and this court in the field of admissions to the Bar was expressly recognized in that case, as it was again in a later Petition of Florida State Bar Association for Promulgation of New Florida Rules of Civil Procedure, 145 Fla. 223, 199 So. 57, 58. In the case last cited, Mr. Justice Terrell, in speaking of the constitutional powers of the Legislature under Sections 20 and 21 of Article III of the Constitution, F.S.A., said: "I do not construe these provisions to be exclusive but supplemental to the power of the courts to prescribe rules regulating contempts, admission to the bar, and for the conduct of judicial business. Certainly they authorize the Legislature to enter these fields and *350 when so entered, legislative acts will be respected by this court." (The emphasis is supplied.)
It cannot, then, be gainsaid that the Legislature has the power to prescribe qualifications for admission to the practice of law in this state, concurrent with that of the Supreme Court. And if the Legislature has such power, then the Respondents have no alternative except to administer the law in accordance with the legislative mandate. This is so because of the well established rule that a ministerial officer, charged with the duty of administering a legislative enactment, cannot raise the question of its unconstitutionality without showing that he will be injured in his person, property, or rights by its enforcement, State ex rel. Atlantic Coast Line Railroad Co. v. State Board of Equalizers, 84 Fla. 592, 94 So. 681, 30 A.L.R. 362, or that his administration of the Act in question will require the expenditure of public funds, Steele v. Freel, 157 Fla. 223, 25 So.2d 501.
The respondents do not here contend that they can bring themselves within the exceptions to above rule  they base their right to attack the constitutionality of the Act solely on the theory that it would be a violation of their oath of office to undertake the administration of an Act which, in their opinion, is unconstitutional. This court dealt squarely with an identical contention in State ex rel. Atlantic Coast Line Railroad Co. v. State Board of Equalizers, supra [84 Fla. 592, 94 So. 683], and its reasons for declining to adopt that theory or doctrine are set forth fully therein. Among others, it was said: "It is the doctrine of nullification, pure and simple, and, whatever may have been said of the soundness of that doctrine when sought to be applied by states to acts of Congress, the most ardent followers of Mr. Calhoun never extended it to give to ministerial officers the right and power to nullify a legislative enactment. It is lodging in them the same power that exists in the circuit and inferior courts, which may declare an act unconstitutional, subject to review by the supreme court. The right to declare an act unconstitutional is purely a judicial power, and cannot be exercised by the officers of the executive department under the guise of the observance of their oath of office to support the Constitution. It is true that the Supreme Court of Nebraska in Van Horn v. State, 46 Neb. 62, 64 N.W. 365, and a few other courts have held that ministerial officers had that right, but there are so many better-reasoned cases to the contrary that we will not adopt the Nebraska doctrine."
It is true, as contended by the respondents, that there is dictum in the cases of City of Pensacola v. King, Fla., 47 So.2d 317, and State ex rel. Harrell v. Cone, 130 Fla. 158, 177 So. 854, which might be construed as an approval of the respondents' theory; but a careful reading of those cases will reveal that, in each such case, there was involved a disbursement of the public funds in the administration of the Act in question  so that these cases could have turned on this one point alone. Nor did this court in either of these cases recede from the rule adopted in the Board of Equalizers case, which we quoted above. The latest expression of this court on this question appears to be in Pickerill v. Schott, Fla., 55 So.2d 716, 719, in which this court said: "They [the appellants] asked for a hearing before the Beverage Director to determine the constitutionality of the Act. There was no duty placed upon the Beverage Director to grant a hearing to the appellants on this question. Not only is it true that the Beverage Director was under no duty but he had no right to grant any such hearing. It was the duty of the Beverage Director to observe the law as he found it until in a proper proceeding its constitutionality is judicially passed upon. See State ex rel. Atlantic Coast Line R. Co. v. State Board of Equalizers, 84 Fla. 592, 94 So. 681, 30 A.L.R. 362; City of Pensacola v. King, Fla., 47 So.2d 317, 318; Steele v. Freel, 157 Fla. 223, 25 So.2d 501."
Under the circumstances, we do not feel bound by the dictum in the cited cases relied on by respondents, and re-affirm the rule of State ex rel. Atlantic Coast Line *351 Railroad Co. v. State Board of Equalizers, supra, that is, that the "right to declare an act unconstitutional * * * cannot be exercised by the officers of the executive department under the guise of the observance of their oath of office to support the Constitution."
And, indeed, the chaos and confusion which would result from the application of such a rule would be immediately apparent. We now have in this state to carry on the state's business almost 100 state agencies, boards and commissions, most of whose members hold office by virtue of executive appointment. The people of this state have the right to expect that each and every such state agency will promptly carry out and put into effect the will of the people as expressed in the legislative acts of their duly elected representatives. The state's business cannot come to a stand-still while the validity of any particular statute is contested by the very board or agency charged with the responsibility of administering it and to whom the people must look for such administration.
As indicated above, there is, of course, an exception to this rule  and that is, when the public may be affected in a very important particular, its pocket-book. In such case, the necessity of protecting the public funds is of paramount importance, and the rule denying to ministerial officers the right to question the validity of the Act must give way to a matter of more urgent and vital public interest. But in the absence of such controlling public necessity, we think that the public interest will be best served by channeling all such attacks on the validity of statutes through the duly-elected public officer whose duty it is to protect the public interest in this respect  the Attorney General of this state. State ex rel. Davis v. Love, 99 Fla. 333, 126 So. 374, and cases therein cited.
For the reasons stated, we hold that the respondents have no standing to attack the Act in question either on the ground that it is special legislation and discriminatory, or on the ground that it lowers the standards prescribed by this court. In this last connection, it should be noted that even after the relator has been placed on the eligible list to take the examination or examinations for admission to the Bar, she still has another hurdle to cross  she must still make the same passing grade as is required of other applicants for admission to practice in this state; and this court knows that such examination is fully comprehensive.
The peremptory writ will issue, requiring the respondents to place the name of the Relator on the list of those eligible to take the bar examination, with the same rights and privileges of those applicants who comply with the rules of this court in this respect.
It is so ordered.
HOBSON and MATHEWS, JJ., and HOLT, Associate Justice, concur.
TERRELL, THOMAS and DREW, JJ., dissent.
TERRELL, Justice (dissenting).
The majority opinion rests on the postulate, (1) that the legislature not having withdrawn from the field, it was fully authorized to enact Chapter 26993, Acts of 1951, under which relator seeks permission to take the bar examination, (2) respondents have no right to challenge the validity of Chapter 26993, for discrimination or that it subtracts from the standards for admission to the bar as prescribed by this Court. They admit that if some vital public interest is involved such as the public purse, an exception to this rule may be invoked.
In answer to the first contention it is sufficient to point out that even though it be admitted for arguments sake that the legislature has not withdrawn from the field and may still prescribe prerequisities for admission to the bar examination, it cannot promulgate an act admitting relator to the bar examination on the basis of scholastic and other requirements below the level or equivalent of those required by *352 respondents and this Court, after thousands have met the latter requirements and have been admitted to the bar.
Chapter 26993, Acts of 1951, on which relator relies, provides that a resident of Florida for the past 35 years, who prior to June 1, 1945, graduated from two 2 year law schools, and who has since the completion of said courses performed duties of a legal nature in the office of the Attorney General of Florida, under the supervision of a member of the bar and who has successfully passed the bar examination in another state and who furnishes satisfactory evidence of good moral character, may be admitted to the bar examination. As against these requirements Sections (b) and (c) Rule one of the Board of Law Examiners requires that applicants to take the bar examination must have completed as a minimum a two year residence course or its equivalent, being one-half the requirement for a bachelors degree on the basis of a four year period in a college or university approved by the Association of Colleges and Universities. In addition to this he must have graduated from a full time accredited law school approved by the American Bar Association, the American Association of Law Schools or any law school approved by this Court.
Relator does not contend that she has met the latter requirements but relies solely on Chapter 26993 that was enacted solely for her benefit. In Petition of The Florida State Bar Ass'n, 134 Fla. 851, 186 So. 280, this Court dealt historically with the law regulating admission to the bar in Florida. We pointed out the Court's inherent power to prescribe requirements for admission including the deference we had accorded the legislature in the exercise of its police power with reference to the matter. The question was further dealt with in Petition of Florida State Bar Ass'n for Promulgation of New Florida Rules of Civil Procedure, 145 Fla. 223, 199 So. 57; Petition of Florida State Bar Ass'n, Fla., 40 So.2d 902; Holland v. Flournoy, 142 Fla. 459, 195 So. 138 and perhaps others. These cases reveal a consistent and persistent effort on the part of The Florida State Bar Association to enlarge the standards for admission to the bar. One of the results of this effort was the enactment of Chapter 10175, Acts of 1925, creating the State Board of Law Examiners and authorizing it to prescribe requirements for admission to the bar on approval of this Court. When the legislature has so acted and this Court has presented minimum requirements to take the bar examination and thousands of applicants have met them, we do not think the legislature can lower these requirements to favor individual cases. The reason for imposing more exacting requirements for admission being to protect the public.
For these and other reasons Chapter 26993, Acts of 1951, falls in the class of special privilege legislation. It is in direct conflict with the rule of this Court long in effect and observed by members of the bar and the respondents had no alternative when brought into court by relator but to determine whether they would observe the act of the legislature or the rule of this Court regulating the subject matter, they being in direct conflict. Similar acts have been stricken down by this and other courts. State ex rel. Spence v. Bryan, 87 Fla. 56, 99 So. 327; Caldwell v. Mann, 157 Fla. 633, 26 So.2d 788; State v. Cannon, 206 Wis. 374, 240 N.W. 441; In re Humphrey, 178 Minn. 331, 227 N.W. 179; In re Grantham, 178 Minn. 335, 227 N.W. 180; In re Day, 181 Ill. 73, 54 N.E. 646, 50 L.R.A. 519; Lineberger v. State ex rel. Beeler, 174 Tenn. 538, 129 S.W.2d 198; In re Adkins, 83 W. Va. 673, 98 S.E. 888.
I think the law of this state authorizes respondents to challenge the validity of Chapter 26993, Acts of 1951. This is all the more true when they were brought into court by relator.
Relator relies on State ex rel. Atlantic Coast Line Railroad Co. v. Board of Equalizers of the State of Florida, 84 Fla. 592, 94 So. 681, 30 A.L.R. 362 to support her contention as to this point. There are aspects of this case which at first blush may appear to support relator's contention but *353 on more mature consideration we do not think it can be said to be in point with the case at bar, much less control it. In the first place it was brought by an individual seeking to compel the State Board of Equalizers to take jurisdiction of an appeal by relator from an assessment and valuation of railroad properties by the comptroller. The question raised by the pleadings was whether or not a ministerial officer had power to challenge the validity of a legislative act without showing that he would be injured in person or property by its enforcement.
In the case at bar the respondents are State officers. State ex rel. Clyatt v. Hocker, 39 Fla. 477, 22 So. 721. It would be an anomaly to contend, much less to hold, that when a State officer or officers are brought into court in a proceeding like this to hold that they could not interpose as a defense a rule of the Supreme Court or challenge the constitutional validity of the act brought in question to determine their duty in the face of such a conflict. That a State officer in Florida may challenge the validity of an act which requires him to perform duties that in his judgment are in conflict with his oath of office to support the constitution is too well settled to admit of controversy. City of Pensacola v. King, Fla., 47 So.2d 317; State ex rel. Harrell v. Cone, 130 Fla. 158, 177 So. 854. We shall later cite many cases supporting this view.
This Court has held that county officers could not challenge the validity of a statute imposing duties that are ministerial only and incidental to the main purpose of the act. Franklin County v. State ex rel. Patton, 24 Fla. 55, 3 So. 471; State ex rel. Russell v. Barnes, 25 Fla. 75, 5 So. 698. But this Court has repeatedly held that a state officer will not be required by mandamus to enforce a statute that is in conflict with the constitution. State ex rel. Russell v. Barnes, 25 Fla. 75, 5 So. 698; Id., 25 Fla. 86, 5 So. 703; State ex rel. Mitchell v. Bloxham, 26 Fla. 407, 7 So. 873; State ex rel. Milton v. Dickenson, 44 Fla. 623, 33 So. 514, 60 L.R.A. 539; Board of Commissioners of La Fayette County v. Handley, 63 Fla. 90, 59 So. 14; State ex rel. Hubbard v. Holmes, 53 Fla. 226, 44 So. 179; State ex rel. Clyatt v. Hocker, 39 Fla. 477, 22 So. 721; State ex rel. Martin v. Board of County Commissioners of Hillsborough County, 81 Fla. 271, 87 So. 917; State ex rel. Luning v. Johnson, 71 Fla. 363, 72 So. 477; State ex rel. Buford v. Spencer, 81 Fla. 211, 87 So. 634; Board of Public Instruction for Santa Rosa County v. Croom, 57 Fla. 347, 48 So. 641; State ex rel. Holloway v. Sheats, 78 Fla. 583, 83 So. 508 and many others might be cited.
Some of the foregoing cases point out that when an officer's duties are merely ministerial and so subordinate in nature that no injury can result from their performance and no violation of duty can be imputed to him because of his obedience to the statute, he may not raise the question of its constitutional validity. This is not the rule as to the application of Chapter 26993. It involves the performance of important executive or administrative duties that are of serious consequences to the bar and the people of this state. If such duties are unauthorized or illegal, mandamus cannot be invoked to coerce their performance.
Respondents admit that if the question has to do with some vital public interest, such as dispensations from the public purse, it may be raised and determined by mandamus. In our form of society we are aware of no question with which the public is more vitally concerned than it is with the competence and character of members of the bar. The lawyer officiates and advises us in the conduct of our daily business, in the management of our estates, in the preparation of wills, in the conduct of litigation, in the preparation and enactment of legislation at every level and he directs the policy and integrity of every phase of our constitutional democracy. In fact when Thomas Jefferson promulgated the Declaration of Independence he administered the spank from which it bounded into life, when Patrick Henry proclaimed "give me liberty or give me death" he started a fire that still burns in the heart of every patriotic American, when Daniel Webster made his "Union forever" speech he set *354 the stage for Abraham Lincoln to save the Union. John Marshall more than any other gave it the national look. In every era of its development the lawyer was present and stimulated its vitality. More than any other class he has been responsible for its policy and its administration. Likewise his responsibility to the public is measured by the factual background that evokes it. Distributing largess or subventions from the public purse is peanuts when measured in importance to the citizen with qualification of members of the bar.
Even if respondents were in court voluntarily, certainly they are within the exception recognized by relator. As to power of respondents to challenge the validity of the Act, relator admits that the authorities are both ways. The cases herein cited show conclusively that the law in this state approves the authority of respondents to raise the point. I therefore dissent and am authorized to say that Mr. Justice THOMAS and Mr. Justice DREW concur in this opinion.
THOMAS and DREW, JJ., concur.