ERVIN, Justice
(dissenting).
I believe there is conflict between the decision in this case and the decisions in the cases of City of Pensacola v. King (Fla. 1950), 47 So.2d 317, and Mercury Cab Owners Ass’n v. Miami Beach Air Transport, *515 Inc. (Fla.), 77 So.2d 837. In the City of Pensacola case it was held the City of Pensacola could be given the power by special act and because of the latitude provided in F.S. Chapter 323, F.S.A., the motor carrier regulations administered by the Florida Public Service Commission, to regulate for hire taxicabs within the “suburban territory immediately adjacent” the City. In the instant case the City of Miami Beach has undertaken pursuant to its charter (Sec. 1, Ch. 13101, Sp.Acts 1927) to regulate fares charged by taxicabs for transporting persons to and from Miami Beach to the Miami International Airport.[1] The Florida Public Service Commission, while it issues permits to such taxicabs for mileage tax purposes, has not assumed jurisdiction to regulate said fares to and from said airport. The Commission appears to acquiesce in such regulation by the City.
I do not believe the City is without power to regulate said taxicab fares within this so-called “hiatus”; that is to say, the area of transportation by taxi between the City of Miami Beach and the Airport. Realistically viewed, the Miami International Airport is a facility provided by the Metro government for all areas of Dade County, including the municipalities therein. This airport is logically within the “suburban territory immediately adjacent” to municipalities in the county and is as much the municipal airport serving each city in the county as is a municipal airport serving a particular city not in Dade County. Moreover, we judicially know the airport is linked with the City of Miami Beach by limited expressway which obviates for the great majority of traffic the need to traverse streets of intervening municipalities. The City of Miami Beach, as well as each city in Dade County, has an important municipal purpose to subserve in regulating taxi transportation between the City and the airport of persons coming into or leaving the City.
The foregoing considered, it appears to me there is conflict in holding the adjacent suburban territory of the City of Miami Beach does not include the Miami International Airport, which was contemplated and designed to serve persons traveling to and from the City of Miami Beach. The Airport is an integral facility of the City with respect to the travel of persons to and from the City. In practical effect the City has close enough access to the airport to warrant regulation of taxi fares similarly as would a municipality directly adjacent to the airport.
Unless and until the Florida Public Service Commission assumes jurisdiction to regulate this transportation between the City of Miami Beach and the Miami International Airport, I believe we should accept the construction of the City of Miami Beach of its charter powers and of F.S. Ch. 323, F.S.A., and, in particular, § 323.05 thereof, that transportation by taxicabs to and from the Miami International Airport and apparently acquiesced in by the Commission, is within the “suburban territory immediately adjacent” the City of Miami Beach.

. See. 1, Oh. 13101, Sp.Acts 1927, empowers the City of Miami Beach “ * * * to regulate the services to he rendered and rates to he charged hy * * * cabs * * * carrying passengers * * * within said City or to points from without to points within said City, or from points loithin to points without * * (Emphasis supplied.)