ERVIN, Justice
(dissenting) :
I feel compelled to dissent from the majority view that Chapter 67-677, Laws of Florida, 1967, is unconstitutional for the reason that the Act is governed by the procedural requirements of Section 21, Article III, which requirements were admittedly not complied with in the present case. I further dissent from the view announced by the majority that claim acts may run afoul of the proscriptions of the so-called Dade County Home Rule Amendment. Florida Constitution, Section 11, Article VIII.
At the outset, I think it is clear from prior decisions of this Court that not all laws which have local or special impact or character are subject to the procedural requirements of Section 21, Article III. Discussing the authority of the Legislature pursuant to Section 24, Article V, to establish a criminal court of record for a county independently of the requirements of Section 21, Article III, this Court, in State ex *559 rel. Cohen v. O’Neal (1930), 100 Fla. 1277, 131 So. 165, 166, stated:
“ * * * All local laws that are not forbidden by section 20, art. 3, may not be subject to the proviso to section 21, art.-3, Constitution. Other sections of the Constitution might expressly or impliedly provide otherwise. See State ex rel. [McQuaid] v. County Com’rs, 23 Fla. 483, 3 So. 193. There may be other .classes of permissible local laws affecting state functions and purposes that are not intended by the Constitution to be governed by the proviso to section 21, art. 3, Constitution, for example, the establishment of courts, state instrumentalities, etc. In so far as chapter 11363' establishes a criminal court of record in Palm Beach county, it is not forbidden by section 20, art. 3, Constitution. The establishment of a criminal court of record is not among the inherent or implied powers of the Legislature. Local laws enacted under the inherent powers of the Legislature may be controlled by sections 20 and 21, art. 3, Constitution unless otherwise fexpressly or impliedly provided by some provision of the Constitution, and express powers to enact local laws may be subject to the proviso to section 21, art. 3, unless the grant of the power expressly or impliedly provides otherwise. Section 24, art. 5, Constitution, expressly and specifically authorizes the Legislature to establish a criminal court of record in any county ‘upon application of a majority of the registered voters in such’ county. This provision necessarily contemplates the establishment of criminal courts of record by local laws; and section' 20, art. 3, does not forbid local laws establishing courts. Section 24, art. 5, may fairly be regarded as granting complete specific authority to severally establish criminal courts of record, and as prescribing the only condition for enacting-laws establishing such courts, notwithstanding the proviso to section 2\, art. 3, section 23, c. 483. This express grant of power to establish a - criminal court of record reasonably may be held to indicate an organic intent that the .specifically granted authority shall be exercised upon compliance with the sole condition stated in the section, viz. ‘upon application of .a majority of the registered voters in’ a county, without a publication of notice of the proposed local law required by section 21, art. 3, of the Constitution * *
In my view, a similar approach is called for in the treatment and construction of the claim bill procedure authorized by Section 11, Article XVI of the State Constitution. An act passed in conformity with this constitutional provision is inherently special, and often local in its impact and character since the benefits flowing from such act ordinarily accrue to a particular person or entity. However, as in the case of other powers conferred upon the Legislature by express constitutional grant, I believe it reasonable to view Section 11, Article XVI as indicating an organic intent that the authority thereby expressly conferred is autonomous and exercisable upon compliance with the conditions and limitations contained in that section.
The majority opinion concludes that Chapter 67-677 as a “claim bill” assumed that degree of local law character contemplated by Section 21, Article III because the warrant for payment of the claim was authorized to be drawn “upon funds in the. state treasury due the board of public instruction of Dade county not specifically appropriated to a particular use.” In this context, I believe the majority are hard-pressed for reason and precedent to justify the conclusion that the diversion of state funds previously appropriated for school purposes in a particular county to pay a claim recognized as a moral obligation of the State in a relief act is in reality a local law enactment.
Where the Legislature merely diverts State funds previously appropriated for public school purposes in a particular coun-. ty, with the result that such diverted funds *560 are committed by the Legislature for the accomplishment of another valid and authorized state purpose, I think such diversion is only incidentally local in operation; does not detract from the primary objective, namely, recognition of a moral obligation of the State in a claims act, and is not within the intended meaning of Section 21, Article III. Political subdivisions of the State are its creatures and have no constitutionally vested right to retain State funds allocated to them, and such funds that have not been committed by contract may be withdrawn or diverted by general law at any later legislative session for another purpose since the Legislature’s power is plenary in this regard. See State ex rel. Harrell v. Cone (Fla.), 130 Fla. 158, 177 So. 854, text 857, 858.
In State ex rel. Gray v. Stoutamire, 131 Fla. 698, 179 So. 730, this Court commented on the nature of special or local laws as follows:
“[7] The terms ‘special or local laws’ as used in the Constitution refer ordinarily to law relating to entities, interests, rights, and functions other than those of the State, since the organic law does not contemplate or require previous publication of notice of proposed laws for the exercise of State powers and functions though they may be more or less local or special in their operation or objects. For example, the establishment of counties and of courts authorized by the Constitution, fixing the terms of courts of the State, the creation of offices, the disposition of State funds and property, and many other attributes of sovereignty.” (Emphasis supplied.) (Text 733.)
It is common knowledge that the Legislature has always treated claim or relief bills as general bills rather than local bills. Local bills, with few exceptions, are placed on the local bill calendar without reference to a committee for study and recommendation. Claim bills are always referred to claims committees for study and recommendation. The footnotes to Justice Drew’s concurring opinion in this case delineate the progress of the claim bill that became Chapter 67-677. They reflect that a claim bill is handled as a general bill through committees and to pass must receive the extra constitutionally required two-thirds vote of the elected members of each house.
Claim bills are enacted to satisfy moral obligations of the State, its agencies or political subdivisions. Claims against the State are referred to as moral obligations because sovereign immunity precludes suit thereon as legal claims absent legislative consent. Such obligations represent state subjects and require general legislation for their satisfaction, although ordinarily a particular person or entity in some locality is the recipient of claim relief. Such obligations may arise, and often do, from a local incident, accident or injury flowing from some state related activity. Often relief acts are paid from special funds irrespective of whether they are devoted to a general or a local purpose, rather than from the State’s General Fund, depending upon the origin of the claim or the State agency or subdivision held accountable. But the fact that monies from a particular fund are appropriated for the payment of a claim recognized as a moral obligation of the State does not convert the general legislation authorizing payment into a special or local act. Once a claim is recognized as a state obligation by passage of a claim bill, the incidental requirement therein that it be paid from a particular fund— perhaps from the funds of a political subdivision — does not convert the relief act into local legislation. See Kaulakis v. Boyd (Fla.), 138 So.2d 505.
It would greatly handicap the Legislature in following its traditional policy of satisfying the State’s moral obligations through the medium of claim bills if prior publication of notice of intention to introduce those having some local impact were required. Not infrequently a claim bill is introduced providing for the claim to be *561 paid from the State’s General Fund, but the claims committee decides the equities of the claim are such that it should be paid from a state agency’s funds or from state funds locally allocated, or from local funds of a political subdivision of the State, and amends the bill accordingly. Under the majority opinion such an amendment relating to funds of a political subdivision often would be constitutionally impermissible during the session, there being no timely prior publication of intent to introduce such an enactment. Other examples come to mind which would hamper legislative discharge of claims if prior publication of the claims legislation was required; namely, claim payments proposed to be made from local and state matching funds, claims arising from dual state and local activity, and claims which could be paid either from state or local funds, or both.
Section 11 of Article XVI, and Section 22, Article III of the State Constitution, read together, clearly indicate claims against the State, its agencies and political subdivisions, are state subjects or purposes and if resort is made to legislation to obtain relief, a general, rather than a local law is constitutionally contemplated. Section 22, Article III grants permissive authority to lift sovereign immunity “by general law for bringing suit against the State as to all liabilities now existing or hereafter originating.” (Emphasis added.) Section 11 of Article XVI permits the Legislature to directly appropriate or pay without prior adjudication in a legislatively authorized suit “any claim, the subject matter of which shall not have been provided for by pre-existing laws,” provided the claim bill therefor is passed by the two-thirds vote of each house. A fair conclusion to be drawn from these sections is that any claim or liability attributable to the State may be satisfied either by general legislation authorizing suit or making a direct appropriation.
Turning now to the question whether the Dade County Home Rule Amendment, Section 11, Article XVI, State Constitution, affects the validity of Chapter 67-677, I find it has no effect because Chapter 67-677 relates to a claim made against the State growing out of the operation of the public school system, a state purpose, rather than against Dade County in its metro capacity; which claim under the Constitution is subject to satisfaction only pursuant to authority of a general law. In Kaulakis v. Boyd (Fla.), 138 So.2d 505, we considered a case involving a personal injury action against Dade County. In disallowing the action, we said:
“Counties, unlike municipalities, are organized as political subdivisions of the state and constitute a part of the machinery of the state government. Therefore, it has been held that they partake of the sovereign immunity from liability. * * * Consequently, unless it can be said that the home rule amendment removes Dade County from the operation of Article III, Section 22 of the Constitution, the county is immune from tort liability, in the absence of a general statute * * *. No such general statute is involved in this case.
* * * * * *
“Appellant relies on paragraph (9) of Section 11 of Article VIII wherein it is declared to be the intent * * * to provide ‘home rule for the people of Dade County in local affairs’ * * *. It is his position that since the funds which would be used in satisfaction of a judgment in his favor are county funds, the matter of immunity from tort liability involves essentially ‘local affairs’. The complete answer to this argument is that by virtue of Article III, Section 22 of the Constitution, immunity from suit is not a matter of local concern but must be dealt with by general law only. * * * ” (Emphasis supplied.)
The foregoing quotation not only is decisive of the question herein concerning the Dade County home rule amendment, but in its broader implications answers questions in this case concerning whether *562 local legislation and the constitutional rules relating to local legislation have any application to a claim act involving funds of a political subdivision of the state. The answer is in the negative.
I do not subscribe to the views expressed in the majority and concurring opinions that further restraints are in order and intended by the Constitution than have been recognized in the past by the Legislature during the existence of the 1885 State Constitution in the enactment of claim bills. Assuming arguendo that abolishment of sovereign 1 immunity and granting general permission of suit against the State similarly as in the case of municipalities would be a salutary reform, there is little reason before realization for rendering it more difficult for citizens to obtain satisfaction of moral obligations through legislative enactments by requiring prior publication of intention to introduce claim bills that have local impact or characteristics.
The policy of handling claim bills as general legislation when state political subr divisions or their funds áre involved has not drawn widespread criticism. The Constitution reposes confidence in the good judgment and fair dealing qualities of legislative 'members (who represent not only state but local interests, also) in the discharge of moral- obligations of the. state through general legislation. The practical problems incident to processing of claims by the Legislature dictated that general legislation be employed rather than local legislation,' which latter is hobbled with procedural restraints that would render it difficult for the Legislature to fit the relief and the accountability for claims appropriately in many situatipns.
It seems to me the better course is not to judicially innovate in this long-followed ■ general legislation claims policy unless and until the Constitution is revised to permit innovations.